Louisa Smith, Appellant, v. A. E. Fuller et al., Appellees, and three other cases.

**Marriage and divorce:** PROOF OF MARRIAGE. Record evidence of marriage is not necessary to prove the fact; it may be shown by other recognized legal evidence, such as testimony of eyewitnesses or of one of the contracting parties, by admissions and confessions of the parties while living together, by cohabitation and repute during the time the parties lived as husband and wife.

**Same:** PRESUMPTION AS TO VALIDITY. While the presumption of death does not obtain where one spouse disappears until after the lapse of seven years, still where the absent one is never again heard of it will be presumed, in favor of the innocence of the remaining spouse in marrying another within the seven years, that the absent party died prior to the marriage.

**Same.** Although it be presumed that the death of an absent spouse occurred on the last day of the seven years after his disappearance, still the marriage to another of the one remaining within the seven years would be presumptively valid from that date, where the marital relations with the other continued unchanged for several years thereafter.

**Same:** PRESUMPTION OF DIVORCE. Nothing but death or divorce will dissolve the marriage relations; and while a divorce will be presumed in order to sustain the validity of a subsequent marriage, yet this presumption may be overcome by competent evidence; as where the records of the proper counties disclose no divorce.

**Same:** DOWER RIGHTS. Neither a legal marriage nor a continuance of the marriage relation, although the parties may have lived apart, are affected, so far as the wife's right of dower is concerned, by the fact that both the husband and the wife were thereafter married to other parties without a divorce and after the death of both the other spouses they were remarried; the wife at the time of her second marriage supposing that her first husband was dead, and insisting upon a remarriage before again living with him because of her second marriage.

**Same:** ESTOPPEL. A wife deserted by her husband cannot be deprived of her dower interest in his property by his wrongful acts in representing to a purchaser that he is single, or is married to another who joins with him in the conveyance, of which his lawful wife had no knowledge; nor will the fact that subsequently

she remarried her first husband operate to estop her from claiming her dower interest in the land so conveyed.

**Same.** When land is purchased from the husband, the wife not join-
7 ing in the conveyance and having no knowledge of the transaction, and the purchaser in no manner relies upon her acts or conduct, her dower interest in the property is unaffected.

**Same.** The fact that a wife supposing her husband to be dead marries
8 another without divorce and by will acquires his property, will not of itself operate as a release of her dower interest in the property of her first husband who was in fact still living.

*Appeal from Pottawattamie District Court.—* HON. N. W. MACY, Judge.

TUESDAY, APRIL 7, 1908.

ACTION in equity to establish plaintiff's dower in certain lands, of which one Frank Smith died seised. The trial court dismissed plaintiff's petition, and she appeals.— *Reversed* and *remanded.*

*Jacob Sims,* for appellant.

*Turner & Cullison, W. H. Killpack,* and *Ira R. Stitt,* for appellees.

DEEMER, J.— One Frank E. Smith at one time owned the lands in controversy. He sold a tract to defendant Richards in the year 1888, and in the conveyance described himself as an unmarried man. In the years 1890 and 1891 he sold tracts to defendant Griffith, his wife, Anna, joining in the conveyance. In the year 1899 he sold other tracts to defendants Fuller and Grobe, and in the conveyance described himself as a widower. Plaintiff claims that she married Smith in the year 1875; that she was never divorced from him, was his lawful widow at the time of his death; and that she never released her dower interest in any of the lands sold by him to the defendants. Defendants claim title

under their conveyancs from Smith, and deny that plaintiff is Smith's widow. The facts in the case are complicated, and the application of the law thereto of considerable difficulty. It appears that plaintiff was married in April of the year 1872 at Farmington, Iowa, to one Sylvanders. They lived together as husband and wife for three or four months, when Sylvanders left home with the ostensible purpose of going to Burlington, Iowa, on a business trip, and so far as the record shows has never since been heard from. Plaintiff continued to live in Farmington until September, 1875, when she claims to have married Smith, who for a number of years had resided in that vicinity; the marriage, according to her contention, having been solemnized by a justice of the peace at the town of La Grange, in the State of Missouri. On the same day, or very soon thereafter, they returned to Lee county, Iowa, announced their marriage to their friends, and lived together there or in that vicinity as husband and wife for about seven years, excepting one year of that time, during which Smith was absent. The testimony is ample and undisputed that they called themselves husband and wife, and held themselves out to the world as bearing that relation, and on at least one occasion joined as husband and wife in the execution of a mortgage. One child was born of this union. In the year 1882 Smith left, saying that he was going to Council Bluffs; but there is no evidence that he expressed any purpose of abandoning the plaintiff, or that he in any manner denied or repudiated her as his wife. From that time plaintiff claims not to have had any word from him for nearly twenty years, except that she heard and believed that he was dead.

Before Frank E. Smith made plaintiff's acquaintance, and during a part of the time while he lived at Farmington, it appears that for a time he lived with a woman called " Net " or " Nettie." The nature of their relations is not clearly shown, but the testimony is to the effect that some time before Smith met the plaintiff this woman disappeared,

having left her then home with a traveling man. Who she was, where she came from, whether married to Smith, and, if married, whether she be dead or divorced, no one professes to know. We believe from the testimony, however, that she lived with Smith as his housekeeper and mistress. Some seven years after Smith left plaintiff on his announced trip to Council Bluffs, plaintiff was married in Lee county, Iowa, to one Dickinson, and with him she lived as his wife until his death in the year 1902. When Smith left plaintiff, he took up his residence in Pottawattamie county, Iowa, where in the year 1889 he married one Ann Norton, with whom he lived until her death. Thereafter he married another woman known as Mrs. Scheyli, with whom he lived until he procured a divorce from her some time prior to the year 1902. In the year 1902, soon after death and the divorce court had released the parties as above stated from their last prior matrimonial entanglements, Smith returned to the plaintiff, and in November, 1902, a marriage ceremony was performed between them, and they lived together until his death put an end to the chapter of their connubial complications. Plaintiff says that the reason that this last marriage ceremony was performed was because, since their separation she had been married and lived with another man, she thought that, in order to live with Smith again, she ought to be married to him. It is admitted of record that during the period between his separation from plaintiff and their final reunion in 1902 Smith became vested with the title and ownership of the several tracts of real estate involved in these controversies, and made conveyances thereof under and through which the appellees derive their title; and that plaintiff never relinquished her dower right, if any she had, in any part of said property. It is shown, also, that the court records of the counties of Lee, Van Buren, and Pottawattamie, the only counties of which either Smith or plaintiff was a resident, during the period of their separation disclose no decrees of divorce or divorce proceedings between them.

Counsel for defendants very strenuously insist that plaintiff and Smith were never married in fact; that if they were married in form the marriage was illegal, for the reason

1. MARRIAGE AND DIVORCE: proof of marriage.

that one or both then had a husband or wife living from whom he or she was not divorced; and that plaintiff never in fact became the legal wife of Smith until the year 1902, which was after Smith sold the lands in controversy to the defendants in these actions. It is said that, at the time when plaintiff claims she married Smith, her former husband, Sylvanders, was living and not divorced, and that Smith was then the husband of the woman "Nettie." The vital questions in the case are: (1) Were plaintiff and Smith ever married prior to November, 1902; and (2) if so, were there any such impediments to the marriage as to make it void? Whether or not there was either a ceremonial or common-law marriage between plaintiff and Smith in the year 1875 at La Grange, Mo., or at any other place, is purely a question of fact. There is no record evidence of any such marriage in Missouri, as claimed by plaintiff; but such testimony is not required to show the marital relation. That may be established by direct testimony of eyewitnesses, by testimony of one of the contracting parties, by admissions and confessions of the parties while living together, by testimony as to cohabitation, and repute during the time the parties are living together and by other recognized legal testimony. *Gilman v. Sheets,* 78 Iowa, 499; *Kilburn v. Mullen,* 22 Iowa, 498; *State v. Williams,* 20 Iowa, 98; *State v. Wilson,* 22 Iowa, 364; *Drinkhouse's Estate,* 151 Pa. 294 (24 Atl. 1083); *Hayes v. People,* 25 N. Y. 390 (82 Am. Dec. 364); *Casley v. Mitchell,* 121 Iowa, 96; *Moore v. Heineke,* 119 Ala. 627 (24 South. 374); *Badger v. Badger,* 88 N. Y. 546 (42 Am. Rep. 263); *Hager v. Brandt,* 111 Iowa, 746; *State v. Nadal,* 69 Iowa, 478.

The individual members of the court have gone over the record with care, and reach the satisfactory conclusion

that plaintiff and Frank E. Smith were married in the year 1875; but it is argued that this marriage was void and of no effect, for the reason that plaintiff was then the wife of Sylvanders, and Frank E. Smith the husband of the woman " Nettie." In addition to the presumption which obtains in such cases that neither of these parties was guilty of a crime, we are constrained to hold that the woman " Nettie " was never married to Smith, that his relations with her were wholly meretricious, and that these relations never changed. We shall not set out the testimony on this point, as to do so would unduly extend this opinion. No claim is made of any ceremonial marriage, and the testimony is insufficient to show a common-law marriage between them.

As to plaintiff, however, there is no doubt that she had been married at the time of her marriage to Smith. There is no showing that she even obtained a divorce from her

2. SAME: presumption as to validity.
former husband, and no showing that her former husband, Sylvanders, had obtained a divorce from her. In other words, there is no testimony whatever regarding that matter. Plaintiff lived with Sylvanders but three months, when he left under the circumstances above disclosed, and has not since been heard from. Plaintiff's marriage to Smith was but three years after Sylvanders left, and at that time there was no presumption that he was dead, at least the circumstances are not sufficient to show his death prior to the time of the marriage to Smith. There is, however, as we have said, a presumption in this case that there was no impediment to plaintiff's marriage to Frank E. Smith. This presumption sometimes is of death and sometimes of divorce. *In re Edwards,* 58 Iowa, 437; Bishop, Marriage and Divorce, section 457, and cases cited. For the purposes of this case, we may concede that under the showing made there is no presumption that Sylvanders had obtained a divorce at any time, and yet there is a presumption of death where one goes away and becomes lost to all his associates, relatives, and friends for the period

of seven years. After the expiration of that period death is presumed; but there is no inference from that fact alone as to the exact time during this seven-year period when the death occurred. *Seeds v. Grand Lodge,* 93 Iowa, 175. Where, as here, two presumptions are to be dealt with, the presumption of innocence is the stronger, and it follows that in such cases the presumption that death occurred before the marriage to Smith is the stronger and must obtain. *Cooper v. Cooper,* 86 Ind. 75; *Johnson v. Johnson,* 114 Ill. 611 (3 N. E. 232, 55 Am. Rep. 883).

Aside from this, and granting arguendo that death is presumed to have occurred on the last day of the seven-year period, it appears that plaintiff's marriage to Smith became valid at least from that time by reason of their continued relations, cohabitation, and repute 3. Same. after that date, and before Frank Smith left for the West as above stated. The seven years expired in July, 1879, and plaintiff and Smith continued their marital relations without substantial interruption until the year 1882. Under the rule in this State this made their void marriage, if such it may be called, presumptively valid. *Blanchard v. Lambert,* 43 Iowa, 228; Code, section 3151.

Proof of Sylvanders' death, while circumstantial, is sufficient for the purposes of this case. There is no claim that he is still alive, save as a presumption exists that one who had being continues to live until his death is shown by direct, circumstantial or presumptive evidence. Of course, if Sylvanders is still alive and undivorced, plaintiff is not the lawful widow of Frank E. Smith, for no presumption can make a woman the lawful widow of two living and undivorced husbands. But death may be established, as we have said, by circumstantial or presumptive evidence, and the fact that a wrong conclusion may result in a case because of the inherent uncertainty of such testimony is no reason for discarding it and branding one as a felon, where there is nothing whatever to meet the testimony in the case at hand, save

that the man who is presumed to be dead may some time turn up and demonstrate his continued existence in the body. If this were not true, no testimony short of direct and positive evidence of death could ever be received or considered in actions such as this, which involves marital relations. Surely the presumption of death after the absence of seven years does obtain in these as well as in other cases, with this exception, perhaps: that, if the person who is presumed to be dead turns up in the future, he is not concluded, save perhaps, in proceedings for the administration of his estate, and mayhap in some other cases, from showing that he is yet alive. That the presumption obtains in such cases as this, see, 1 Bishop, Marriage and Divorce, section 953; *Sneathen v. Sneathen,* 104 Mo. 201 (16 S. W. 497, 24 Am. St. Rep. 326); *Cooper v. Cooper,* 86 Ind. 75; *Kelly v. Drew,* 12 Allen (Mass.) 107 (90 Am. Dec. 138); *In re McCausland's Estate,* 213 Pa. 189 (62 Atl. 780, 110 Am. St. Rep. 540).

It should also be remembered that something more than thirty years had elapsed from the time he disappeared down to the time of the trial in the court below, and that nothing had been heard of or from him during that period. What has been said regarding Sylvanders and his relations to plaintiff is also applicable to Frank Smith's relations with the woman Nettie. Even if she were at one time married to him, the presumption of death arose in her case before he (Smith) left the plaintiff and went west. It does not appear that the woman Nettie ever heard of plaintiff, or knew of her relations with Smith; so that we must find that the marriage of plaintiff to Frank E. Smith became legal and binding not later than the year 1881.

With the marriage of plaintiff and Smith established as it most clearly is, and finding no impediment thereto which has not been removed, we now come to another branch of the case, and that is the subsequent conduct of this marital pair after Smith went to Council Bluffs. It is everywhere asserted, and no-

4. Same: presumption of divorce.

where denied, that nothing but death or divorce will dissolve the marriage relation; and this is true notwithstanding the presumptions to which we have adverted, save that it is now quite generally held that for certain purposes and in certain actions either husband or wife may be estopped from claiming that a marriage existed, or from asserting a right to the property of the other in an action against strangers. Now, there is no doubt that both plaintiff and her husband Frank E. Smith were alive, and went through a form of marriage as late as the year 1902. Indeed, it is conceded that Smith did not die until the year 1903. So that they were husband and wife, unless divorced. There is no claim of any divorce except by presumption, and the testimony clearly negatives the idea of a legal divorce. The records of the proper counties were searched, and these show that no divorce was ever granted to either. This under the doctrine announced *In re Colton's Estate,* 129 Iowa, 542, clearly negatives the thought that a divorce was ever granted either of these parties.

However, appellee insists that, by reason of the showing as to subsequent marriages, the same presumptions should obtain as with reference to the Smith marriage to plaintiff; 5. SAME: dower rights. but this is not true, for the reason that Smith is conceded to have been alive down to the year 1903, and the records show that no divorce has ever been granted. As to Sylvanders and the woman Nettie, they are not shown to have been alive since their respective disappearances in 1872 and 1874; and there is no showing that either of them obtained a proper divorce. These facts point to the clear distinction between the two cases.

The subsequent marriages of plaintiff and Frank E. Smith should be considered in determining whether or not she and Smith were in fact married before the year 1902; but such subsequent marriages will not in and of themselves defeat plaintiff's action. The evidence as to these subsequent marriages is entitled to great weight, but will not prevail over clear and satisfactory testimony showing a mar-

riage between plaintiff and Smith. In other words, a subsequent marriage does not amount to a divorce, nor will it prevail over a prior one. A marriage is always presumed to be legal, and, in the absence of proof to the contrary, it will be presumed that there were no impediments thereto. And, as we have said in the first division of this opinion, death or divorce will be presumed in order to sustain the validity of such a marriage. But this presumption is not a conclusive one, and will not prevail over established facts to the contrary. This is fundamental, and we need only cite in support of the doctrine *Thompson v. Nims,* 83 Wis. 261 (53 N. W. 502, 17 L. R. A. 847); *In re Colton's Estate,* 129 Iowa, 542; *Ellis v. Ellis,* 58 Iowa, 720; *Gilman v. Sheets,* 78 Iowa, 499. Defendants contend that the *Colton* case, *supra,* settles this controversy in their favor; but a careful examination of that case will show that it supports every principle here announced. With reference to plaintiff's subsequent marriage, she testified that, as she had heard nothing from Smith for more than seven years after he deserted her, she believed him to be dead, and that such was her view when she married Dickinson. But, whatever the truth about this, her subsequent marriage to Dickinson did not dissolve her prior legal relations to Smith. There is no testimony that she knew of the existence of Frank Smith at the time of or after her marriage to Dickinson, and before his (Dickinson's) death, or that she knew anything of Smith's subsequent marriages. Hence many of the cases relied upon by appellee are not in point. Among such cases are *Barnes v. Barnes,* 90 Iowa, 285; *Leach v. Hall,* 95 Iowa, 617. The subsequent marriages of Frank E. Smith taken alone are not to be considered as evidence against the plaintiff. It nowhere appears that she had any knowledge thereof. Indeed, the contrary affirmatively appears. Plaintiff's subsequent marriage to Smith in 1902 should not deprive her of her rights, if she was, in fact, married to him in 1875 as claimed. The subsequent ceremony is not necesarily inconsistent with her

claim of prior marriage. This subsequent marriage is explained on the theory that, because of her marriage to Dickinson, she regarded a subsequent ceremonial marriage with her former husband, Smith, a necessity for various reasons. These may not have been good, and yet sufficient to explain her conduct. *Adger v. Ackerman,* 115 Fed. 130 (52 C. C. A. 568); *Shank v. Wilson,* 33 Wash. 612 (74 Pac. 812); *Simmons v. Simmons* (Tex. Civ. App.) 39 S. W. 639.

But one question remains. For appellees it is argued with great force and plausibility that plaintiff by reason of her conduct is estopped from asserting title to any part of

6. SAME: estoppel.

the lands in controversy. It is said that her marriage to Dickinson in 1889, the fact that she received some if not all of his property by will, her silence in regard to her relations with Smith, her remarriage to Smith after the death of Dickinson, Smith's subsequent marriages, and some other acts on her part estop her in this action from claiming any part of the property. In this connection it must be remembered that none of these parties purchased their lands subsequent to the year 1891. This was long before plaintiff's remarriage to Smith; hence none of them relied upon that fact. She married Dickinson in 1889; but defendants knew nothing of that fact, and Dickinson did not die until the year 1902. Hence nothing that she did with reference to taking Dickinson's property would constitute an estoppel, for defendants purchased long before that time. It is true that, in the conveyance to defendant Griffith, Smith represented himself as a married man, and his wife, Anna, joined him therein. In the other conveyances he described himself as an unmarried man or as a widower; but of none of these facts did plaintiff have knowledge. If an estoppel is to be found, it must be from her conduct in not searching for Smith, or taking some means for his discovery. This the law does not require, nor was she bound to do so under our decisions. The recordation statutes do not apply to the inchoate right of dower. *Cruize v. Billmire,* 69 Iowa, 398;

*Felch v. Finch,* 52 Iowa, 563. In the *Cruize* case it is expressly held that the mere fact that the parties live apart will not constitute an estoppel. Had plaintiff known of Smith's conduct in marrying other women after 1882, and raised no protest or objection thereto, a different case would be presented; but it affirmatively appears that she did not know of these occurrences. Plaintiff testified that she did not know of or hear anything from Smith from the time he deserted her in the year 1882 until he presented himself at the Dickinson farm, where she was living in the year 1902, admitted that he was her husband, and had been since 1875, and the ceremonial marriage was entered into for reasons already stated. There is nothing to disprove these statements save their inherent improbabilities and inconsistencies; but these are not sufficient to overcome the sworn testimony of the witnesses.

A conclusive answer to the plea of estoppel is the fact that none of the defendants did anything with reference to plaintiff's conduct in making their purchases of the lands; and they do not claim to have known anything

7. SAME.        of her relations to and with Dickinson. They believed the statements made by Frank E. Smith at the time he made his conveyances to them with reference to his marital relations, but of these plaintiff had no knowledge; so that, if there be any estoppel in the case, it must arise from plaintiff's silence, and from that alone. The fact that she lived separate and apart from Smith does not constitute an estoppel, and she will not be estopped unless it became her duty to speak or to find out what her husband was doing. Her testimony is that she believed Smith to be dead when she married Dickinson, and there is no claim that she knew anything to the contrary until the year 1900, which was after all the defendants had purchased their property. Unless she knew of Smith's conduct, or was bound to know what he was doing, she was not bound by what he did. This is fundamental. Moreover, there is, as we have said, no claim that

defendants relied upon plaintiff's subsequent conduct. The case is ruled in this respect by *Shane v. McNeill,* 76 Iowa, 459.

Much is made of the fact that plaintiff received some, if not all, of Dickinson's property at his death in 1902. That is true. But she received it by will, and is not now claiming it as a widow or survivor of Dickinson.

8. SAME.     Even had she received it under the statute as widow, this would not in itself defeat her claim to the property in controversy, for she is still the widow of Frank E. Smith. Dickinson's heirs might perhaps challenge the will whereby she acquired the property for undue influence or upon other grounds, and might defeat her claim were she making it to statutory dower; but this will not avail the defendants in this suit. As they acquired their property long before plaintiff took anything from Dickinson, it is entirely immaterial to them how much she may have acquired from Dickinson, or from any one else for that matter. And this is true, although she may have obtained it under claims of subsequent marriages. It is true that the conclusion in this case results in a hardship to the defendants, but so does every case where a widow appears and claims dower after a purchase from a husband who is supposed to be single or married to another. The recordation acts do not apply to dower either inchoate or consummate. This has been so frequently held that it is useless to cite authorities to sustain the proposition. It may be that the Legislature should change the rule. But, however this may be, it is not for us to do so.

There can be no doubt under this record that plaintiff is the lawful widow of Frank E. Smith, and that she has done nothing to relinquish her dower in his property. It follows, then, that she should have a decree as prayed. The cases must each be reversed and remanded for further proceedings in harmony with this opinion.— *Reversed.*