401 P.2d 109

Iva M. TROWER, Plaintiff-Appellee,

v.

BOARD OF COUNTY COMMISSIONERS OF CURRY COUNTY, New Mexico, Employer, and St. Paul Fire and Marine Insurance Company, Insurer, Defendants-Appellants.

No. 7634.

Supreme Court of New Mexico.

April 12, 1965.

Rowley, Davis, Hammond & Murphy, Clovis, for appellants.

Smith, Smith & Tharp, Clovis, for appellee.

COMPTON, Justice.

This is an appeal from a judgment awarding workmen's compensation benefits to Iva M. Trower as the surviving dependent widow of Walton C. Trower, a deceased workman.

. In response to the claim for death benefits filed by the appellee, the appellants admitted that the workman died as a result

of injuries sustained within the scope of his employment, but they denied that the appellee was his widow. The marital status of the appellee was the sole issue before the trial court, and is the sole question on appeal.

The testimony of the appellee is substantially as follows. She and the decedent prior to their marriage were residents of Curry County, New Mexico. They purchased a marriage license at the Quay County Clerk's Office and were married in Tucumcari, Quay County, New Mexico, on August 4, 1934, by a justice of the peace whose name she thought was "Francis." The decedent as she recalled paid $2.00 for the license. The ceremony was performed at the noon hour in the presence of two girls unknown to the appellee who were called·in as witnesses. The justice of the peace filled in the license, and the parties, the witnesses and he signed it. The completed certificate was then placed in an envelope and given to the couple by the justice of the peace with instructions either to bring it or mail it to the clerk's office to be recorded. Appellee and the decedent then returned to Curry County where the marriage was ·kept secret until the latter part of August, 1934. An account of the marriage appeared in a Clovis newspaper on August 31, 1934. About a week after it was made·public they established residence in their own home north of St. Vrain, New Mexico. The appellee never inquired of de-

cedent whether the marriage certificate had ever been recorded. It had been kept in a cigar box with other papers and· was not missed until years later when they were looking for the title to their car and the cigar box was missing.

The mother of the decedent testified that sometime in 1934 her son told her that he was married and showed her a marriage certificate. On it she saw the names of her son and the appellee and the signature of the justice of the peace. It is undisputed that from the time the parties began living together at St. Vrain until the death of Walton C. Trower on July 7, 1962, some 28 years later, they continued to live together in Curry County, held themselves out and were commonly known and accepted by the public as husband and wife. One daughter was born to them who lived to womanhood. In addition, during these years, they filed joint income tax returns and joined in deeds and mortgages affecting real estate.

On behalf of the appellants, the present county clerk of Quay County testified that she found no records in that office of a marriage license application, a marriage license or a receipt for payment of a fee for a marriage license in the names of the appellee and Walton C. Trower. The records in the Quay County clerk's office were intact and had not been mutilated or destroyed in any manner. The county clerk also testified that in addition to the record

book for taking applications for licenses and for recording marriage licenses, there was a separate book for "tear out" licenses; that these licenses are sent to her office in blank and as they are issued to the parties their names are written or typed in; that they are then torn out of the book and handed to the parties; that she had found occasions in Volumes 6 and 7 of the marriage record books, which covered the year 1934, where some of the pages were spoiled; that it was customary in such a case to destroy the "tear out" license applicable to such spoiled page, but that she could not say that in every such case the corresponding license was voided. She also testified that the name of the justice of the peace in that particular precinct of Quay County in August, 1934, was B. L. Francis, and that the fee for a marriage license in 1934 was $1.00.

At the conclusion of the hearing the court found "that the plaintiff is the surviving widow of Walton C. Trower and that she was dependent upon him * * *."

Appellants first contend that a valid marriage cannot be consummated in New Mexico unless a license therefor has been issued. This point is obviously based on the inability of the appellee to produce a marriage certificate or a public record of the issuance or recording of a marriage license to the parties.

Our statutes, §§ 57–1–1 to 57–1–18, N.M.S.A., 1953 Comp., require the solemnization of marriages contracted within this state, and § 57–1–10 requires all persons desiring to enter into a marriage relation in the State of New Mexico to obtain a license to do so. While these statutes prescribe the manner in which a marriage may be solemnized in this state, nowhere do they set forth rules of evidence by which a valid marriage must be proven. The fact of marriage, like any other fact, may be proven either by direct or circumstantial evidence, documentary evidence or by parol, and the sufficiency of the evidence to establish a marriage is governed by the general rules of evidence. Lopez v. Townsend, 42 N.M. 601, 82 P.2d 921. See also Rone's Estate v. Rone, Mo.App., 1949, 218 S.W.2d 138; Vest's Administrator v. Vest, 234 Ky. 587, 28 S.W.2d 782; Munsey v. Munsey, Ky., 1957, 303 S.W.2d 257; Johnson v. Johnson, 235 S.C. 542, 112 S.E.2d 647.

The presumption in favor of the validity of a marriage, although rebuttable, is one of the strongest presumptions known. If a marriage in fact is established, it is presumed to be regular and valid, United States v. De Amador, 6 N.M. 173, 27 P. 488, and the burden of adducing evidence to the contrary rests on the party who attacks it. Marris v. Sockey, U.S.C.A., 10th Cir., 170 F.2d 599; Freeman S. S. Co. v. Pillsbury, U.S.C.A., 9th Cir., 172 F.2d 321; 55 C.J.S. Marriage § 43; 35 Am.Jur., Mar-

riage, § 194. While no factual situation similar to the present one has previously been considered by this court, the strong presumption in favor of the validity of marriages had been recognized by us in Ferret v. Ferret, 55 N.M. 565, 237 P.2d 594; Tallent v. Tallent, 43 N.M. 261, 91 P.2d 504; and in In re Jubala's Estate, 40 N.M. 312, 59 P.2d 356. We think the mere lack of evidence of a record of the issuance of a license or of a ceremonial marriage is not sufficient to rebut the presumption of a ceremonial marriage as claimed by appellee. See Freeman S. S. Co. v. Pillsbury, supra.

It should be pointed out here that the court refused to find, as requested by the appellants, that a marriage license was not issued to the parties or that a ceremonial marriage did not take place. The failure to find upon this material point in issue must be regarded on appeal as a finding against the appellants. Herrera v. C & R Paving Company, 73 N.M. 237, 387 P.2d 339; Hopkins v. Martinez, 73 N.M. 275, 387 P.2d 852.

[redacted] We conclude that there is substantial evidence to support a finding of a valid ceremonial marriage by the parties. This conclusion obviates our consideration and disposition of another point raised. The judgment of the court below should be affirmed, and appellee should be awarded the sum of $750.00 for the services of her attorneys on appeal.

[redacted]

It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.