528 P.2d 888

**William Dale PANZER, Plaintiff-Appellant,**

v.

**Gloria PANZER, Defendant-Appellee.**

**No. 9885.**

Supreme Court of New Mexico.

Nov. 27, 1974.

Franks & deVesty, Michael F. Croom, Albuquerque, for plaintiff-appellant.

Larry Buchmiller, Albuquerque, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

Appellant prosecutes this appeal from a final decree awarding appellee a divorce, alimony and attorney's fees. We reverse.

Appellant sued for an annulment of his purported marriage to appellee alleging appellee was married to another. Appellee answered and counterclaimed for divorce, for division of community property, for temporary alimony pendente lite, and for child custody and support as to an unborn child apparently expected.

The trial court denied the annulment, awarded a divorce to appellee, granted her custody of and support for the unborn child, requested an amendment of her pleadings so as to seek permanent alimony and then made an extraordinarily generous award. It also allowed attorney's fees. Appellant now complains of the denial of the annulment and the awards of alimony and attorney's fees.

We will first consider whether the court erred in refusing to grant the annulment.

Some explanation of the facts is needed. They are largely undisputed and disclose exceedingly irregular conjugal relationships among the players in this drama.

Appellee has purportedly been married to Messrs. Sparkman, Mallou, Anderson and Panzer, in that order. There is no issue here concerning the first two. The parties met in May, 1972, and commenced living together the same day. In August, 1972, they went through a marriage ceremony in Juarez but at that time appellant was married to another. In November, 1972, appellant was divorced from appellee's predecessor and a week later the parties went through another marriage ceremony in Taos ("marriage 3").

It is alleged as grounds for annulment that the marriage of the parties was void because appellee's marriage to Mr. Anderson, who still lives, was not terminated ("marriage 2"). A tangled web. But there is more. Appellee asserts that her supposed marriage to Mr. Anderson was invalid because at the time of those nuptials he was married to another who still lives, and that that union had not been dissolved ("marriage 1").

At first blush the facts here present a complex and difficult problem, an impression stoutly confirmed by a study of the authorities. We stand in need of a definitive precedent if there is very much of this sort of thing going on. The cases and texts are pregnant with discussions of burdens and quantums of proof, presumptions and countervailing presumptions, presumptions growing stronger with the passage of time and the birth of progeny, presumptions available or unavailable, or waxing and waning according to the "guilt" of the person asserting them or against whom they are asserted. We agree with Judge Markell of the Maryland Court of Appeals who said:

"* * *, [I]t would indeed be 'an interminable, as well as hopeless task' to discuss, or attempt to reconcile, all the cases on this subject in other jurisdictions. * * * Conflict is found princi-

pally in weighing facts and determining the legal sufficiency of evidence, i. e., in the application, more than in the statement, of principles involved." Schmeizl v. Schmeizl, 184 Md. 584, 42 A.2d 106 (1945).

See Annot., 34 A.L.R. 464 (1925); 77 A. L.R. 729 (1932); 14 A.L.R.2d 7 (1950); 14 A.L.R.2d Later Case Service 132 (1973).

■ We can start with the proposition that a marriage, standing alone, is presumed valid. Trower v. Board of County Com'rs of Curry County, 75 N.M. 125, 401 P.2d 109 (1965); United States v. De Amador, 6 N.M. 173, 27 P. 488 (1891).

A statement that a marriage is presumed valid is actually a statement that the party attacking it carries the burden of proof. As is provided by Rule 301 of the Rules of Evidence [§ 20–4–301, N.M.S.A.1953 (Supp.1973)]:

"* * * a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

■ It is thus inappropriate to categorize the strength of the presumption of validity of a marriage as being "strong", "very strong", "extremely strong" or "one of the strongest known to the law." Cf. Trower, supra. Such statements are a confusing blend of two concepts, viz.: which party has the burden of proof and the quantum of proof necessary to carry it. Trower, supra, is overruled insofar as it characterizes the presumption of validity attaching to a marriage as "one of the strongest presumptions known", and "strong". In re Jubala's Estate, 40 N.M. 312, 59 P.2d 356 (1936) is overruled insofar as it speaks of "a conflict of presumptions" and of the presumption attaching to one of the marriages there under consideration increasing in strength with the passage of time.

■ We turn to the quantum of proof required to carry the burden. We hold that the invalidity must be proven by clear and convincing evidence. The "clear and convincing" quantum applies in a number of circumstances in our jurisprudence. It is in general use and generally understood. We see no need to fashion or adopt a special quantum for use in attacking the validity of a marriage.

Problems arise in dual or multiple marriage fact situations. These involve a measuring of one marriage against another in order to test validity.

■ In dual marriage situations, in which the validity of the second marriage is attacked on the basis of the first being a subsisting relationship at the time the second was contracted, the presumption of validity attaches to the second marriage. 52 Am.Jur.2d Marriage § 140 (1970). In such a fact situation and legal context, we decline to say as this court did in De Vigil v. Albuquerque & Cerrillos Coal Co., 33 N.M. 479, 270 P. 791 (1928), that the presumption of validity attaches to both marriages but that attaching to the second is stronger. De Vigil is overruled to that extent. We simply hold that the presumption attaches to the second marriage.

■■ In a chain of marriages in which a marriage is claimed to be invalid because of the continued existence of a predecessor, the presumption of validity initially attaches to the later in point of time. 52 Am.Jur.2d Marriages § 140 (1970). Scholars might debate, as have members of this court, whether the cases cited in support of the Am.Jur.2d Text, viz.; Howard v. Kelly, 111 Miss. 285, 71 So. 391 (1916); Coachman v. Sims, 36 Okl. 536, 129 P. 845 (1913); and Smith v. Fuller, 138 Iowa 91, 115 N.W. 912 (1908), truly support it. In my opinion, they do in both rationale and result. In any case, we are of the opinion that we should adopt and approve the proposition that the presumption of validity attaches to any marriage in a chain of marriages as opposed to any earlier marriage in the chain.

■ If a party attacking the validity of a later marriage by showing the continued

existence of a predecessor makes out a prima facie case, his adversary is free to attack the validity of the predecessor, but in that case has the burden of proof. Brownell v. Brownell, 74 N.Y.S.2d 136 (Sup.Ct. 1947). In resolving that issue, as between the predecessor and the even earlier marriage, the presumption of validity would attach to the former, it being the later in point of time.

■ Applying these precepts to the case at bar, marriage 3 is initially presumed to be valid. Appellant who was attacking its validity on the grounds of the continued existence of marriage 2, had the burden of proving by clear and convincing evidence that marriage 2 existed at the time marriage 3 was contracted. This was established as we shall presently see, although by admissions in the appellee's pleadings rather than proof.

■ In appellee's attack upon marriage 2 by attempting to show the continued existence of marriage 1, she carried the burden of proof in overturning it because under the rule we have adopted, she was confronted with a presumption of the validity of marriage 2 which was the later in point of time.

What we have said does not touch upon the elements which must be proven to demonstrate the continued existence of a prior marriage; that is, the elements of proof necessary to overcome the presumption of validity which attaches to a later one. It is upon this pivot that this case actually turns.

■ The authorities which we consider to be sound require proof of the prior marriage plus the fact that it has not been terminated by death or divorce. In In re Jubala's Estate, supra, this court quoted with seeming approval from 18 R.C.L., Title, Marriage, § 44:

"To overcome the prima facie case established by the showing of a subsequent marriage, proof of a former marriage is required, and also evidence from which

it may be concluded that it has not been dissolved by death or divorce."

It is generally recognized that in many fact situations these elements place a heavy, sometimes an impossible, burden on the attacker of proving two negatives—no death and no divorce. This is especially true in mobile societies with transitory marital relationships. Nevertheless, we approve these requirements.

Many cases and authorities, to which appellee has not failed to cite us, require the additional showing of the validity of the prior marriage. See 3 Nelson, Divorce and Annulment, § 31.62 (1945); Annot. 14 A.L.R.2d 7 at 45–46 (1950). We reject this requirement. We think it not only goes too far, but it is inconsistent with the principles laid down in our cases. In United States v. De Amador, supra, the court said:

"* * * the celebration of a marriage being proven, the contract, the capacity of the parties, and in fact the validity of the marriage are presumed."

■ Appellant in his petition alleged marriage 2 and its nondissolution by divorce or death. Under the elements of proof that we have announced, these were the ultimate facts which he had the burden of proving by clear and convincing evidence. Appellee admitted these allegations in her answer. As we said, in a succinct statement of the obvious, in Chavez v. Gribble, 83 N.M. 688, 496 P.2d 1084 (1972):

"No proof is required as to that which is admitted in the pleadings."

It is true that the existence of the necessary elements to show the continued existence of marriage 2 do not appear very clearly, if at all, from the evidence, and the court declined to find their existence in its decision. This is of no moment. Their establishment flows as a matter of law from the pleadings. Cf. Tallent v. Tallent, 43 N.M. 261, 91 P.2d 504 (1939).

It is true that the court found marriage 2 to be invalid because of the continued existence of marriage 1. There was proof of the marriage 1 ceremony but a failure of proof of its non-termination. The finding is not sustainable, and the contrary is not very seriously argued.

It follows that the court erred in dismissing appellant's petition for annulment, and in granting a divorce to appellee. Prince v. Freeman, 45 N.M. 143, 112 P.2d 821 (1941).

 Section 22–7–6, N.M.S.A.1953 provides for suit money and alimony in actions for dissolution of the bonds of matrimony. It does not apply to annulment actions. Prince v. Freeman. The same would be true under the 1973 amendment to that statute were it applicable in this case. § 22–7–6, N.M.S.A.1953 (Supp.1973). Moreover, this case is not one in which alimony may be allowed following an annulment. § 57–1–9, N.M.S.A.1953. It follows that the trial court erred in awarding permanent alimony and attorney's fees. Nor will attorney's fees be allowed for services in this appeal.

The final decree is reversed. The trial court is directed to set the same aside and to enter a new decree annuling the purported marriage between the parties and denying appellee's counterclaim with prejudice. The new decree will bear the same designation of parties as its predecessor. If appellee's pregnancy, found to exist by the trial court in its decree, has culminated in the birth of a child who is living still, the new decree may provide for child support payments at the same level as its predecessor, no attack having been made upon that portion of the decree, and may also provide for medical and hospital expenses in connection with the child's birth in the same manner as is presently done.

The new decree shall further restore to appellant his property awarded to appellee by the decree from which this appeal was taken. The trial court is authorized to conduct a further hearing, sua sponte, or on the petition of either party, in connection with such property and its restoration, and to enter appropriate orders in respect thereto in accordance with the views expressed in this opinion.

It is so ordered.

OMAN and MONTOYA, JJ., concur.