# ESTATE OF TUINANAU FUIMAONO, Deceased

High Court of American Samoa
Appellate Division

AP·Nos. 25-92 and 27-92

January 4, 1994

Before CANBY*, Acting Associate Justice, MUNSON**, Acting Associate Judge, AFUOLA, Associate Judge, and LOGOAI, Associate Judge.

Counsel:  For Fa'alua Fuimaono and Ato Fuimaono, Gata E.W. Gurr,
    For Sapati Fuimaono, Charles V. Ala'ilima.

CANBY, Acting Associate Justice:

---

\* Honorable William C. Canby, Jr., Circuit Judge, United States Court of Appeal for the Ninth Circuit, serving by designation of the Secretary of the Interior.

\*\* Honorable Alex R. Munson, Chief Judge, United States Court of Appeal for the Ninth Circuit, serving by designation by the Secretary of the Interior.

This appeal arises from a decision of the trial division determining heirship in the estate of Tuinanau Fuimaono.[1] Tuinanau died intestate in 1984. Those claiming to be heirs include: Fa'alua Fuimaono, who was held out as Tuinanau's wife for a period of 37 or 38 years prior to his death; Saumaleato ("Ato") Fuimaono, Fa'alua's son by a prior marriage, who had been raised as a son of Tuinanau and Fa'alua; and Sapati Fuimaono, a son of Tuinanau's by a prior marriage. The disputed claims are those of Fa'alua and Ato; there is no dispute over Sapati's claim, although the amount of his inheritance is necessarily increased if either of the other claims are defeated.

## DISCUSSION

### I. Fa'alua's Claim

It appears from the evidence that Tuinanau was originally married to one Selepa, and Sapati was born of that relationship in 1940. The couple separated in approximately 1945, and it is not clear whether they were ever legally divorced.

Tuinanau and Fa'alua began living together in 1946 or 1947. There is no marriage certificate in the files of the Registrar of Vital Statistics of American Samoa, and no other certificate was entered into evidence. Several other documents were admitted into evidence and referred to by the trial court: a church document purporting to show a marriage in 1946, performed by a person named "Morrow" -- apparently a reference to former Chief Justice Arthur A. Morrow; a Certificate of Identity travel document, issued to Fa'alua on September 8, 1976, by the American Samoa Attorney General's Office, stating that she was married; an American Samoa Birth Certificate, issued as a late registration of January 28, 1971, and appended to the Certificate of Identity, stating that Fa'alua was born in Fagatogo, American Samoa, on January 11, 1905; and an Alien Registration Form issued by the Attorney General, which Fa'alua completed under oath on February 11, 1964, using her maiden name of Letuli and stating that she was born on March 14, 1930, in Western Samoa, that she was a citizen of Western Samoa, and that she had entered American Samoa at Fagatogo on June 22, 1947, and was living with the Fuimaono family in Nu'uuli.

---

[1] The trial court modified the title of this case to "Estate of Tuinanau Fuimaono, Deceased." The court observed that all proceedings for the administration of the estates should bear such a simplified caption. We follow the practice of the trial court.

111

The trial court found that not all of these documents could be genuine, and that only the Alien Registration Form was accurate (except for its recited date of birth). As a consequence, the court found that the union of Tuinanau and Fa'alua had never been solemnized by a marriage ceremony. The court further found that, despite their having held themselves out as married for some 38 years, Tuinanau and Fa'alua both knew that the relationship was not a legal marriage. The court therefore concluded that, because common law marriages are not recognized in American Samoa, *see* A.S.C.A. § 42.0101(e), Fa'alua was not a spouse of Tuinanau for purposes of inheritance.

On appeal, Fa'alua argues that the trial division gave insufficient force to the presumption of the validity of a marriage derived from long cohabitation and holding out as man and wife. *See e.g., Trower v. Board of County Commissioners*, 75 N.M. 125, 401 P. 2d 109 (1965). She relied on the fact that the community had recognized her marriage to Tuinanau for 38 years, that she and Tuinanau executed deeds and other documents as husband and wife, that Tuinanau would not have been appointed a deacon of his church if he had not been married to her, that the immigration service issued her an identity document with the last name Fuimaono, and that the Social Security Administration had satisfied itself that she was entitled to benefits as Tuinanau's widow.

We conclude that Fa'alua's contentions have merit, and that the ruling that she was not entitled to inherit as Tuinanau's widow must be reversed.

■ We are aware that the question of the existence of a marriage is one of fact, *see* 52 Am. Jur. 2d, Marriage, § 127, but we are satisfied that, in making its rulings of fact, the trial division gave too little force to the presumptions applicable to a case like this, and to the evidentiary force of the exceptionally long period during which Tuinanau and Fa'alua held themselves out as being married, and acted wholly consistently with that status. Cohabitation and reputation as husband and wife are not only relevant for purposes of common-law marriage; they constitute evidence that a marriage ceremony in fact took place. "[P]ersons living together in apparent matrimony will ordinarily be presumed to have been married ceremonially in states rejecting the doctrine of common-law marriages." *Id.* at § 132; *see Suddeth v. Hawkins*, 202 S.W.2d 572, 575, 577-78 (Mo. App. 1947). The strength of the presumption depends on the circumstances of the case, 52 Am.Jur.2d at 132, and in this case the circumstances are unusually strong in favor of marriage. Not only did Tuinanau and Fa'alua consistently hold themselves out as married for 37

or 38 years, they appear to have been accepted almost universally as being legitimately married. Tuinanau's position as deacon of his church is perhaps the weightiest indication of community belief in the validity of the marriage.

■ We agree with those cases holding that the presumption arising from this long and consistent pattern of behavior bears weight of its own, *see, e.g., In re Nidever's Estate*, 181 Cal. App. 2d 367, 5 Cal. Rptr. 343, 350-51 (1960). The length and consistency of this relationship and of the community understanding compel, in our view, a finding that a ceremony had occurred; it is not overcome by the representations in the Alien Registration Document -- the sole document suggesting that Fa'alua was not married, and one that misstates Fa'alua's birth date by some 25 years. We also note that the uncertainty whether Tuinanau had been divorced from his prior wife is no bar to recognizing Fa'alua's marriage to Tuinanau; there is a strong presumption that the prior of two marriages has been dissolved. *See* 52 Am. Jur.2d, Marriage, § 140.

The trial division, while recognizing that Tuinanau and Fa'alua consistently acted as a married couple for 37 or 38 years, found that they both knew that their marriage was not a legal marriage. This finding, however, depended on the earlier finding that there had been no marriage ceremony -- a finding that we have determined to be erroneous.

We accordingly reverse the ruling of the trial division to the extent that it determined that Fa'alua was not entitled to inherit as the spouse of Tuinanau.

## II. Ato's Claim

The trial division originally found that Ato was the child of Tuinanau and Fa'alua, but it modified this finding in its amended order. There it determined that Ato was Fa'alua's son by a previous relationship, not Tuinanau's son, but that he had been raised from infancy by Fa'alua and Tuinanau "as their genuine son." Recognition of Ato as their child extended expressly and implicitly to several legal documents. The Fuimaono family "essentially accepted the practical, day-to-day, father-son relationship between Tuinanau and Ato."

On the strength of these findings, the trial division held that Tuinanau had effected an "equitable" or "de facto" adoption of Ato for inheritance purposes. *See* 97 A.L.R.3d, *Adoption by Estoppel*, 347, 353-55, 359-65

*(1991)*. Ato was accordingly held to be entitled to inherit from Tuinanau's estate as if he had been a natural son.

■ Sapati appeals this ruling, raising several arguments, all of which we reject. First, Sapati contends that adoption is entirely a creature of statute, and that Ato cannot have been adopted because the statutory requirements of American Samoa for adoption were neither followed nor attempted to be followed. *See* Title 45, chapter 4, American Samoa Code Annotated. Sapati relies on cases refusing to recognize the doctrine of equitable adoption. *See, e.g., Clarkson v. Bliley*, 185 Va. 82, 38 S.E.2d 22 (1946); *Brassiel v. Brassiell*, 228 Miss. 243, 87 So.2d 699, 722 (1956). There is, however, a line of authority to the contrary, that recognizes equitable adoption despite the existence of statutory procedures for adoption. *See* 97 A.L.R.3d, *Adoption by Estoppel*, *supra*. The question is an open one in American Samoa, and the trial division was not compelled to follow the cases on which Sapati relies. We agree with the trial division that the more just approach is to permit equitable adoption upon a showing of long and consistent treatment of the claimant as the "genuine son" of the decedent. We conclude that the law of American Samoa may recognize equitable adoption for purposes of inheritance from the individual estate of the equitable adoptive parent. As the trial division recognized, this doctrine may be applied in the absence of proof of a specific contract to adopt. *Wheeling Dollar Savings & Trust Co. v. Singer*, 250 S.E.2d 369, 373-74 (W. Va. 1979).

■ Sapati next argues that Ato failed to plead a claim of equitable adoption, and that the trial division erred in recognizing that claim *sua sponte*. We disagree. The underlying facts were adequately placed in issue by Ato's claim that he was the son of Tuinanau, and there was ample evidence that he was held out as Tuinanau's son. The trial court retains discretion to adjudicate claims that were not pleaded. *See* T.C.R.C.P. 15(b). Sapati has not shown that he had additional relevant evidence on the question that he was deprived of an opportunity to present when the trial court entertained the equitable adoption claim. As for Sapati's argument that there was a failure of evidence of a specific agreement to adopt, we have already pointed out that no such evidence is needed under the rule of *Wheeling Dollar Savings*, *supra*.

■ Finally, Sapati argues that the doctrine of equitable adoption runs counter to Samoan public policy and custom, in that it gives recognition to numbers of individuals who may be known as "sons" in an extended family. Sapati overstates the trial court's ruling, however. The trial court was well aware that in Samoa a head of family may refer to many persons as "sons" when those persons are not biological sons and are not

114

intended to inherit from the putative father's individual estate. The trial court, however, required and found that in the present case there was much more of a relationship than that. Tuinanau held Ato out as his "genuine" (*i.e.*, biological or statutorily adopted) son during the many years that commenced with Ato's infancy. The rule adopted by the trial court, and affirmed here, requires a finding that the equitably adopted child "has stood from an age of tender years in a position *exactly* equivalent to a formally adopted child." *Wheeling Dollar Savings,* 250 S.E.2d at 373-74 (emphasis in original). The trial court's ruling was a narrow one, and does not encompass the many looser "father-son" relationships found in a customary extended family. We note as well that the trial court's ruling holds Ato to have been equitably adopted for purposes of inheritance from his father's individual estate. No other effect of equitable adoption was adjudicated, and no other effect is affirmed here. All that we conclude is that Ato is entitled to share in his father's inheritable estate as an equitable adopted son.

## CONCLUSION

The ruling of the trial division that Fa'alua is not entitled to inherit as Tuinanau's surviving spouse is REVERSED. The ruling that Ato is entitled to inherit as an equitably adopted son is AFFIRMED. The case is REMANDED to the trial division.

It is so ordered.