This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MATHEW W. PIERSON**,

    Petitioner-Appellee,

v.                                        **NO. 32,688**

**TINA S. LONG**,

    Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa Ann Hadfield, District Judge**

James P. Baiamonte
Albuquerque, NM

for Appellee

Tina S. Long
Albuquerque, NM

Pro se Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1} Respondent, pro se, appeals from the district court's final decree of dissolution of marriage. We issued a notice of proposed summary disposition, proposing to affirm. Respondent has filed a memorandum in opposition to our notice. We have duly considered her response and remain unpersuaded that the district court erred. We, therefore, affirm.

{2} In her docketing statement, Respondent argued that there was no valid marriage, and therefore, the district court erroneously granted a dissolution of marriage and erroneously divided the property in accordance with "common law." [Amended DS 18-22] Respondent also argued that the rules of evidence were violated when the district court admitted the unfiled marriage license. [Amended DS 19-20] In her final issue, Respondent argues that the district court erred by denying her motion to take judicial notice of facts under Rule 1-090 NMRA and erred by denying her motion for stay of all orders, for voiding the judgment, and to dismiss to change venue to another civil case. [Amended DS 20-21] The calendar notice construed Respondent's final challenge to the denial of a motion for stay as a motion for stay in this Court filed under Rule 12-207 NMRA and denied it.

{3} The issues in Respondent's memorandum in opposition to our notice do not track the subject matter of the issues addressed in our notice. Respondent pursues her arguments that the marriage was invalid and the district court erroneously distributed

the property under what she has distinguished as "Issues 1 & 2," [MIO 1-10] and "Issue 3." [MIO 11-30] Respondent includes a fourth issue, but its subject matter is not clear to us. [MIO 31-34] *See Clayton v. Trotter*, 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct. App. 1990) (stating that the appellate court will review pro se arguments to the best of its ability, but cannot respond to unintelligible arguments). Under "Issue 4," Respondent refers to general propositions regarding stare decisis, judicial notice, substantial evidence, and "law of the case." [MIO 31-34] We do not review undeveloped arguments or speculate about the arguments intended to be made. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076; *Newsome v. Farer*, 103 N.M. 415, 419, 708 P.2d 327, 331 (1985) (holding that pro se litigants are held to the "same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar"). Because Respondent does not present us with an intelligible and developed argument under "Issue 4," we do not address it further. Also, because Respondent does not respond to our proposed analysis under Issues 3 and 4 in our notice, she has abandoned those matters. *See Taylor v. Van Winkle's IGA Farmer's Mkt.,* 1996-NMCA-111, ¶ 5, 122 N.M. 486, 927 P.2d 41 (recognizing that issues raised in a docketing statement, but not contested in a memorandum in opposition are abandoned).

**{4}**     As a result, we address only what we understand Respondent to argue in response to our notice about the validity of the parties' marriage and the division of property. Respondent bases her contention that the marriage was invalid on the unfiled marriage license and "falsified" marriage certificate. [Amended DS 18-19] Our notice recognized that a marriage is valid even where it lacks a marriage license and certificate, however. *See Rivera v. Rivera*, 2010-NMCA-106, ¶¶ 16-19, 149 N.M. 66, 243 P.3d 1148 (holding that the Legislature did not intend to make void a marriage performed in New Mexico without an accompanying New Mexico marriage license); *Trower v. Bd. of Cty. Comm'rs*, 75 N.M. 125, 128, 401 P.2d 109, 111 (1965) ("We think the mere lack of evidence of a record of the issuance of a license or of a ceremonial marriage is not sufficient to rebut the presumption of a ceremonial marriage as claimed by appellee"), *overruled on other grounds by Panzer v. Panzer*, 87 N.M. 29, 528 P.2d 888 (1974). "Marriage is contemplated by the law as a civil contract, for which the consent of the contracting parties, capable in law of contracting, is essential." NMSA 1978, § 40-1-1 (1862). "Our Supreme Court has stated that '[f]or a marriage to be valid, it must be formally entered into by contract and solemnized before an appropriate official.'" *Rivera*, 2010-NMCA-106, ¶ 8 (alteration in original) (quoting *Merrill v. Davis*, 100 N.M. 552, 553, 673 P.2d 1285, 1286 (1983). "The fact of marriage, like any other fact, may be proven either by

4

direct or circumstantial evidence, documentary evidence or by parol, and the sufficiency of the evidence to establish a marriage is governed by the general rules of evidence." *Trower*, 75 N.M. at 129, 401 P.2d at 111.

{5} Respondent does not dispute that an officiated marriage ceremony took place, at which Petitioner and Respondent exchanged promises, and for which there were witnesses and a signed and completed marriage certificate. [Amended DS 8] Respondent's arguments in response to our notice do not address the merits of our proposed analysis; she continues to rely on unfulfilled promises, the unfiled marriage license, and the "falsified" marriage certificate. We affirm the district court's refusal to grant an annulment and agree that the appropriate course of action was a dissolution of marriage.

{6} Because we hold that the parties were legally married, we reject Respondent's complaints that the distribution of property was made under community property principles. Although she does not make it perfectly clear, Respondent seems to concede that this Court should examine some aspects of the distribution of property only if we agree with her that the parties were not legally married. [MIO 10-12, 15-17] To the extent that Respondent contends that the parties had an agreement that she would put money in a joint bank account and sell her furniture and other personal items in exchange for her name to be placed on the deed of the home, Respondent

would need to make a showing of a separate agreement that is distinct from her contention about marriage. Respondent does not make the factual or legal basis for these arguments clear; we presume that Respondent made an insufficient showing of such an agreement. *See, e.g.*, *Aragon v. Boyd*, 80 N.M. 14, 17, 450 P.2d 614, 617 (1969) (stating that the statute of frauds requires written evidence of an agreement involving interests in property, stating all the essential elements of a contract with reasonable certainty and including a signature by the party to be charged).

{7} Respondent also complains that the district court divided funds from the parties' joint bank account under community property principles, calculated from the date the parties opened the account, ten months before they were married. [MIO 19-28] It appears that Respondent contends that if the district court was correct in dividing the joint bank account in this manner, Respondent should be entitled to ownership of the items purchased between the time they opened the account (April 2011) and when they were married (February 2012). [MIO 23] Respondent does not describe the items that were purchased during this time and does not explain why awarding her ownership of the items might have a greater value than the district court's division of the funds. The only items Respondent specifically points out are truck upgrades, a mountain bike, and "other home appliances," and complains that they were not distributed. [Id.] Respondent does not state how she preserved her complaints about

6

these items or how and why they should have been distributed. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

{8}    The final decree indicates that the district court distributed several items the parties purchased, awarding Respondent the gardening tools, awarding Petitioner the juicer, and splitting the value of the juicer and gardening tools equally; the court assigned debt to Petitioner for the purchase of the storage shed and the patio furniture, and split the parties' debt to the Hyundai equally. [RP 311-312] Also, the district court noted that the joint bank account never dipped below the amount Petitioner originally had in his account before adding Respondent to it. [RP 310] The district court divided the net gain to the joint bank account between the parties equally, even though the district court indicated that Petitioner had contributed much more to the account. [RP 310-11] The district court noted that if Petitioner had presented a more detailed analysis to the court, most likely, he would be entitled to more than he requested and received from the joint bank account. [RP 310] The district court also credited Respondent for her share of the principal reduction to Petitioner's separate, real property and granted her half of the community's interest in Petitioner's individual checking account. [RP 311]

7

{9}      Respondent's arguments are too vague and disjointed to establish that the district court erred in its division of the joint bank account.  Moreover, Respondent does not provide this Court with a sufficiently comprehensible view of the overall division of the property and does not state a coherent theory that would justify reversal of the district court's distribution of any piece of property.  In our notice, we warned Respondent that she should provide us with a succinct explanation of the relevant expenses the parties made, the evidence and legal authority that supports her view of each expense, the arguments made by the parties below, and the grounds for the district court's rulings.  Respondent has not clarified any of these matters, and as a result, Respondent has not demonstrated error.  *See Farmers, Inc., v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990) (stating that the appellate court presumes that the trial court is correct, and the burden is on the appellant to clearly demonstrate that the trial court erred).

{10}      For the reasons stated, we affirm the district court's final decree of dissolution of marriage.

{11}      **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CYNTHIA A. FRY, Judge**