## MARIANA MANUELA MARTINEZ *v.* TOMAS LUCERO.

COMMISSIONER'S AUTHORITY TO TAKE DEPOSITIONS NOT EXCLUSIVE.—Notwithstanding the appointment of a commissioner to take the testimony in a cause, depositions may be taken before the chancellor, upon legal notice to the adverse party, and used upon the trial.

DECREE NECESSARY TO SEPARATION OF HUSBAND AND WIFE.—According to the principles of the civil law, a separation from bed and board, or a dissolution of the conjugal association, must be decreed by a competent tribunal, and the consent of the parties is not enough.

WIFE'S RIGHT TO RECOVER DOTAL PROPERTY.—Without a decree of dissolution of the conjugal association, a wife can not recover from her husband, or resume the administration of her separate dotal property without showing waste or dissipation of it by the husband, especially where she has voluntarily abandoned him without cause, and is living in adultery with another.

DOTAL PROPERTY, WHAT IS.—Dotal property is the capital given to the husband by the wife, or some one for her, before or after the marriage, for the purpose of supporting the matrimonial expenses.

COSTS ON BILL TO RECOVER DOTAL PROPERTY.—On the dismissal of a bill filed by a wife to recover her dotal property, because the conjugal association still continues, the costs must be decreed against the husband, he being the lawful custodian and administrator of the wife's estate, and therefore liable for expenses which she may incur.

APPEAL from the district court of the second judicial district for the county of Taos. The opinion states the case.

*M. Ashurst,* for the appellant.

*H. N. Smith,* for the appellee.

By Court, BROCCHUS, J.:

This was a bill in chancery in the district court of the

second judicial district, for the county of Taos, by Mariana Manuela Martinez against her husband, Tomas Lucero. The complainant alleges that on or about the thirtieth day of September, 1828, she intermarried with Tomas Lucero, and that at the time of said marriage and afterwards, a large amount of money, property, chattels, and real estate, the absolute property and inheritance of the said complainant, was delivered to the said Tomas Lucero as her husband, in trust for her use and benefit, and for the use and benefit of both, while they should live together as man and wife. The bill further alleges that they lived together as man and wife for the space of eight years, and that then, from various causes, a separation between them took place; that a few years afterwards, in the year 1847, they were reunited and lived together in the matrimonial relation for the space of eleven months; that at the expiration of that eleven months, they again separated, without issue, and have never since lived together. The complainant further alleges that her said husband has for years past been living in open adultery with another woman, by whom he has two children, and that he has been wasting and dissipating the property and effects of said complainant for the benefit of his said paramour and her two children, and she has good reason to believe that he will continue to waste, dissipate, and so convert the same until the whole amount thereof shall have been consumed. The petitioner therefore prays that the said Tomas Lucero be enjoined from further waste and dissipation of her estate; that he be compelled to answer the allegations of her bill; that he be compelled to account with her for the full amount of her property and estate, as well as the rents and profits thereof, since their last separation, and that such further relief may be granted as the nature of the case may require.

The respondent, Tomas Lucero, in his answer, admits that he intermarried with the complainant as alleged in her bill, and that they lived together for some seven or eight years. He avers that about seven or eight years after their marriage, he discovered that his said wife had proved faithless to him by the commission of adultery with one Mariano

Martinez, and that she then, of her own accord, left her house and lived with the said Mariano Martinez in different houses; that in the year 1839, he went to California to escape the infamy and injuries his wife was heaping upon him; that at the time of his departure, she was living with the said Máriano Martinez; that upon his return to New Mexico, in 1842, he found her living in adultery with Mariano Lucero, a priest of the holy Catholic church, and first cousin to him, the respondent; and that she continued to live in adultery with said Mariano Lucero until the year 1846, when, through the solicitations of the respondent and the intercession of one Jose Antonio Martinez, she returned to her house and promised to live a reformed life and continue to live with the respondent. About nine or ten months after, she presented herself before Jose Maria Valdez, an alcalde of the county of Taos, and before him they separated by mutual consent, and the complainant at the time of separation released the respondent from any claim whatever that she might have had against him. And he further avers that immediately after their last separation his said wife returned to the house of the said priest, Mariano Lucero, and continued to live in open adultery with him up to the period of the filing of his answer to the complainant's bill. He also avers that in order to comply with his conjugal duties and his religious obligations, he made many sacrifices to induce her to return to him, and discontinued his effort only when all hope of reformation had gone.

The respondent admits that he had at the time of his answer a woman living in his house to aid and assist him in his household duties, and that the said woman has two children, but avers that he does not know whether he is the father of said children or not. He denies the allegation that he is wasting and dissipating the property of the complainant upon the said woman, and avers that he never took the said woman or any other into his house until he had made several efforts to induce his said wife to live with him; and that as late as the year 1854 he requested said complainant to return to her home and perform the duties of a wife towards him, and that she refused so to do. The re-

spondent further avers that he has paid to his said wife the full amount of property which he received as her separate estate.

Upon the final hearing of this cause upon bill, answer, and proofs, it was ordered and decreed that complainant take nothing by her bill, but that the same be dismissed with costs against her, to which decree the counsel for complainant excepted and appealed therefrom. In the progress of this cause in the court below an order was made appointing George Long a special commissioner to take depositions in the cause upon the giving of twenty days' notice to the respective parties or their attorneys, and afterwards while the said order continued in force. Depositions were taken on behalf of the respondent before the chancellor in vacation at the court-house in Fernandez de Taos. Eighteen days' notice was given to the solicitor of the adverse party at his residence in Fernandez de Taos, setting forth the time and place at which such depositions were to be taken. Upon the final hearing of the cause the solicitor for the complainant moved to quash the depositions, because they were not taken in conformity to the order of the court appointing George Long a commissioner for that purpose. The motion was overruled. The counsel for the complainant excepted to the said ruling.

The errors assigned in this cause are, that the district court erred in overruling the motion to quash the respondent's depositions; that the court erred in decreeing against the complainant and for the respondent, and that the court erred in adjudging costs against the complainant. From an inspection of the record it appears that the depositions to which the counsel for complainant objected, and the motion to suppress which was overruled, were taken in due form, and that the most ample notice was served upon the complainant, through her counsel, by the sheriff, eighteen days before the period thereof, in which notice the time and place at which the depositions were to be taken were distinctly set forth.

This court can not perceive the reasonableness or force of an objection to the taking of testimony between the

parties to a cause in chancery before the chancellor at any time, providing that due notice be given to the adverse party of the time and.place of taking the same, although an order may have previously been made, and still be in force, appointing a commissioner before whom the parties might take their testimony. It is to be presumed that the order was made for the convenience of the chancellor or the accommodation of the parties to the cause, and not with a view of giving exclusive authority to the commissioner to take depositions between the parties. It is not to be supposed that it was designed as an abrogation or annulment of the authority of the chancellor to take depositions to be used in the hearing of the cause. The order was standing at the time at which the depositions were taken, and either party had a right to take testimony in pursuance thereof at any time upon a compliance with the requirements thereof, by giving due notice of the time and place of taking the same; but the parties were not so far bound by that order as to be divested of their right to resort to any other mode of taking their testimony which the law might have prescribed, or which equity would have sanctioned. Furthermore, as the chancellor must be presumed to possess greater fitness for the taking of testimony in a cause pending before him, and the issues of which it is his province to determine, it would seem to be an enlargement of the equitable advantages of the parties, and a promotion of the ends of justice, to have the witnesses in the cause examined before him. From this reasoning it follows that no error was committed in the court below in overruling the motion to quash the depositions complained of in the assignment of errors.

The view taken by this court of the questions and principles involved in the merits of this cause, and by which it must be determined, renders it unnecessary and irrelevant to inquire whether the respondent, Tomas Lucero, had in his possession the estate and property of Mariana Manuela Martinez, the complainant, as alleged in her bill, or not. The important questions of fact for our inquiry are, whether the complainant and respondent were legally married, and

if so, have they continued in the conjugal association up to the period of the institution of this suit? The first fact is established by the allegation of the complainant and the concurrent averment of the respondent. It appears from the bill of the complainant that she intermarried with the respondent in the year 1828; that she lived with him as his wife for the period of eight years, and that then, from various causes, a separation between them took place; that a few years afterwards, in the year 1847, they again united and lived together as man and wife; and that about eleven months thereafter they again separated by mutual consent, not having had any children, and have never since lived together. She also alleges that the respondent had received a large amount of property and money belonging to her as her inheritance, a portion of which he had returned to her, and the balance of which he was wasting and dissipating upon a woman with whom he was living in adultery, and by whom he had two children. The respondent, in his answer, affirms the allegation of marriage between the complainant and himself, and charges adultery on her part as the cause of their separation. He admits the adulterous cohabitation against himself, but denies that he is wasting and dissipating the property of complainant as alleged in her bill.

Both of the parties present themselves in court, repulsive to every sentiment and feeling that arises from a due appreciation of the honorable and sacred relation of matrimony. The wife alleges that she separated from her husband, and thus did violence to the obligations which she had solemnly and sacredly assumed, without assigning any cause for such a separation. She again separates from him without the assignment of a cause, and then alleges as a ground for the restitution to her of her estate, that he is wasting and dissipating her property, in an adulterous cohabitation with another woman. The husband, in return, avers that she left her house on account of adulterous infidelity to him, and that she was, at the time of the filing of her bill, living in open adultery with a priest of the holy Catholic church, who stood in the near relation of first cousin to her husband; and this averment is sufficiently

well established by the proof to deepen the sense of mortification which this court feels in seeing a party with hands thus stained entering a court of equity and asking that relief which none but those having a pure heart and a clear conscience have a right to demand. And the shamelessness of the complainant appears in a stronger light when we behold her, not content with coming into court and revealing her own disregard for her matrimonial obligations, but also dragging her husband before the public, and compelling him to make disclosures and confessions of guilt to his own dishonor, into which he alleges he was driven by her own heartless infidelity towards him, in the commission of adultery, and the abandonment of his house.

From all that appears on the record, the complainant and respondent stand toward each other in the relation of man and wife. The separations alleged in the complaint and answer have no legal effect in the dissolution of the conjugal relations, and they were at the time of' the commencement of this suit, as firmly bound, for all legal purposes, in the bonds of matrimony, as they were on the day of their. marriage, or in the palmiest and most concordant hour of their conjugal association.

According to the principles of the civil law, a separation from bed and board, or a dissolution of the conjugal association, must be decreed by a competent tribunal and not by the consent of the parties: Civil Law of Spain and Mexico, p. 10, art. 33. It does not appear from the record that any separation had been decreed by a competent tribunal; but the separation which took place between the parties appears to have been voluntary, against the policy of matrimonial law, without legal sanction, and therefore powerless for the purpose of dissolving the conjugal tie. The complainant, in her bill, did not even allege, as a cause of separation from her husband, any one of the causes which would have availed her in a prayer for separation before a competent tribunal. It is true that in entering the court below, which had power to decree a divorce, she alleged adultery against her husband as an auxiliary to the establishment of the waste and dissipation of her property, and,

if she had appeared with clean hands, the court, upon proof of her allegations, might, under the general prayer for relief, have decreed a separation in order to place her in a legal attitude to resume the administration of her property; but the answer of the respondent, while it affirmed the allegation of adultery against himself, also averred a recrimination of the same degree of conjugal infidelity on her part, and, unfortunately for her, the proof in the cause gave too strong a coloring to the truth of the averment to entitle her to that relief which a court of equity will grant to those alone who are able to show that they have done equity. In this instance, the parties appeared in a character too impure, with guilt too equal and too deep, to allow the chancellor to decree a separation. If the complainant, standing spotless and guiltless in the court below, had proved the allegation of adultery against the respondent, and the court had failed to decree a separation in order to place her in an attitude for the restitution of her dower, this court might now adjudge such an omission as error in the court below; but we find in the record no such cause, no such favorable character for the complainant.

We are, then, to view the complainant in the character of the lawful wife of the respondent, and it is a principle of the civil law which has been too often asserted by this court to render repetition necessary, that a wife can not, during the conjugal association, recover from her husband her separate dotal property, or resume the administration thereof, without showing waste or dissipation of the same on the part of her husband; for the administration of the dotal property, whether appraised or not, belongs exclusively to the husband during the existence of the marriage: Civil Law of Spain and Mexico, p. 77, art. 349. The husband, at the request of the wife, may be deprived of the administration of the dower, whether it consist of money, movables, or immovables, whenever he wastes or dissipates the same improperly, either by play or other irregularities. Id., p. 78, art. 354. The dowry and other goods which the wife may have brought to her husband, are left with him on condition that he bear the charges of the marriage, and she can not demand a sep-

aration of goods except when the disorder of the husband's affairs puts him out of the condition of being able to bear the said charges, and when the goods which he has of his wife's are in danger: Domat Civil Law, 394. The property claimed by the complainant is described in her bill as dotal property. Dower is the capital which the wife, or some one for her, gives the husband for the purpose of supporting the matrimonial expenses. The dower may be given or increased after the celebration of the marriage, and the dotal property thus given is subject to the same rules as that given before celebration: Civil Law of Spain and Mexico, p. 75, arts. 337, 338. The bill of the complainant alleges that at the time of her marriage and since, a large amount of money, property, chattels, and real estate of her absolute property and inheritance, was delivered to the respondent as her husband, in trust for her use and benefit, and for the use and benefit of both while they lived together as husband and wife.

The property sued for by the complainant is, therefore, according to her own allegation, dotal property, and consequently of such a nature as to bring her within the law, in reference thereto, which denies to the wife the right to resume the administration of her dower during the existence of the marriage. Upon the subject of the equity of the wife to a maintenance out of her own equitable estate, we find, in Story's Equity Jurisprudence, the same principles laid down as are established by the authorities on the civil law. That author says that such separate maintenance is generally confined to cases where the husband abandons or deserts his wife, or where he refuses to maintain her, or where, by reason of insolvency, he is unable to afford a suitable maintenance for her. Unless some of these ingredients exist, courts of equity will decline to interfere. If, therefore, the separation of the wife from her husband is voluntary on her part, and is caused by no cruelty or ill-treatment, or if he is *bona fide* ready, willing, and able to maintain her, and she, without good cause, chooses to separate from him, or if she has already a competent maintenance; in all such cases courts of equity will afford no aid

whatever in accomplishing a purpose which is deemed sub-
versive of the true policy of the matrimonial law, and de-
structive of the best interests of society. *A fortiori*, where
the wife has eloped and is living in a state of adultery, they
withhold all countenance to such grossly immoral conduct,
and they will leave the wife to bear as she may the ordinary
results of her own infamous abandonment of duty: 2 Story
Eq. Jur. 880.

This case, as it appears upon the record, falls too clearly
within these principles. The complainant, according to her
own allegations, separated from the respondent as his wife
without the assignment of any cause which would have justi-
fied her in so doing. She lived thus in separation from
him for years, and her husband avers that during the period
of their separation she was living in open adultery, and
from the testimony adduced during the progress of the suit,
this court is left under the painful conviction that the re-
spondent had reason enough to justify him in making the
averment. While thus derelict to her conjugal obligations,
thus recreant to the duties enjoined upon her by the matri-
monial bond, thus sullied by the unrefuted charge of guilt,
she presents herself before a court of chancery, and asks
that relief which, even if she had presented herself pure
and spotless, the court could not have granted; for the
marriage tie between her and the respondent still existed;
the conjugal association had not been dissolved. She still
stood in the eye of the law related to the respondent as his
lawful wife, and as such the court could not grant to her the
administration of the property, which she claimed without
proof of waste and dissipation of the same on the part of the
respondent. The bill of the complainant alleges waste and.
dissipation; but the respondent in his answer denies the
charge, and no testimony is introduced to establish the
truth of the allegation.

From the view taken by this court of the law of this case,
in reference to the incompetency of the wife to resume the
administration of her dotal property during the existence
of the marriage, it follows that the costs in this cause were
erroneously taxed in the court below against the complain-

ant upon the dismissal of her bill; for she was still the wife of the respondent, and he as her husband was still the custodian and administrator of her estate. The husband alone administers the property of the conjugal partnership during the entire existence of the marriage relation, unless the same be taken from him by due course of law, and he is, therefore, while he thus continues to administer the estate of his wife, presumed to be alone able and liable to defray such expenses as she may incur. The court below should have dismissed the bill without prejudice to the parties, and the costs should have been taxed against the respondent. The decree of the district court is therefore affirmed as to the dismissal of the bill, and reversed as to the taxing of the costs.

Order: This cause came on to be heard upon the transcript of the record from the district court for the second judicial district, in the county of Taos, and was argued by counsel; on consideration whereof, it is now here ordered and adjudged, that the decree of the said district court in this cause be, and the same is hereby affirmed as to the dismissal of the complainant's bill, and the decree of said court be reversed so far as it taxes the cost against the complainant, and that the same be taxed against the respondent.