555 P.2d 700

Pat LAUDERDALE, mother and next friend of Salome Ramon Leyba, Corina Leyba, and Connie Ramona Leyba, minor dependent children of Ramon Leyba, Deceased, Plaintiff-Appellee,

v.

HYDRO CONDUIT CORPORATION, Employer, Self-Insured, Defendant-Appellee,

v.

Francies B. LEYBA, Plaintiff-In-Intervention-Appellant.

Nellie LEYBA, Plaintiff-Appellant,

v.

HYDRO CONDUIT CORPORATION, a Self-Insurer, Defendant-Appellee.

No. 2503.

Consolidated.

Court of Appeals of New Mexico.

Sept. 28, 1976.

Rehearing Denied Oct. 18, 1976.

Certiorari Denied Nov. 16, 1976.

John J. Carmody, Jr., Kanter & Carmody, P.A., Albuquerque, for appellant Francies B. Leyba.

Joe A. Duran, Albuquerque, for appellant Nellie Leyba.

John Hogan Stewart, Quincy D. Adams, Adams & Foley, Albuquerque, for appellee Lauderdale.

Vance Mauney, P. A., Albuquerque, for appellee Hydro Conduit.

## OPINION

WOOD, Chief Judge.

The dispositive issues in this workmen's compensation case are: (1) whether wife No. 3 was entitled to compensation; (2) whether wife No. 1 was entitled to compensation; and (3) attorney fees on appeal. We hold that neither wife was entitled to compensation; accordingly, we do not reach the question of how compensation should be apportioned between a wife and children of another woman.

Leyba was killed in a compensable accident. Pat, the mother of the three minor children and allegedly wife No. 2, sought workmen's compensation benefits on behalf of the children. Pat did not claim compensation benefits on the basis of being a widow. Francies, wife No. 3, intervened in the action brought by Pat. Francies sought compensation benefits as a widow. Nellie, wife No. 1, filed a separate action seeking compensation benefits as a widow. The cases were consolidated. The trial court's decision was that neither Francies nor Nellie were entitled to compensation benefits. The trial court awarded compensation to the children of Leyba and Pat. Francies and Nellie appeal.

Leyba married Nellie in November, 1952. He lived with her until May, 1959 at which time they separated. The record indicates an allegedly common law marriage between Leyba and Pat in 1960 or 1961, and an Oklahoma divorce decree in October, 1968. Leyba married Francies in Fort Worth, Texas in August, 1969. Francies was living with, and dependent upon, Leyba at the time of his death in October, 1973.

Leyba and Francies were separated for approximately three months in the fall of 1972. For a portion of this time, Nellie again lived with Leyba.

No one claims, in the appeal, that the children were not entitled to compensation benefits. Both Francies and Nellie claim benefits on the basis of § 59–10–12.10(B), N.M.S.A., 1953 (2d Repl. Vol. 9, pt. 1) which reads:

"The widow or widower, only if living with the deceased at the time of his death, or legally entitled to be supported by him, including a divorced spouse entitled to alimony."

*Whether Wife No. 3 Was Entitled to Compensation*

Under *Panzer v. Panzer*, 87 N. M. 29, 528 P.2d 888 (1974), Leyba's marriage to Francies, being later in point of time, is presumed to be valid. Nellie, attacking the validity of Francies' marriage, had the burden of proving the invalidity. To meet this burden, Nellie had to prove her prior marriage, and that the marriage had not been dissolved by death or divorce. If Nellie met this burden, Francies was not a widow and thus not entitled to compensation benefits. *In Re Reichert*, 95 Idaho 647, 516 P.2d 704 (1973); *Peters v. Peters*, 177 Kan. 100, 276 P.2d 302 (1954) and Annot., 80 A.L.R. 1428 (1932).

It is undisputed that Leyba married Nellie, Leyba also married Francies—thus, was not dead. The issue on appeal is whether there was sufficient evidence that Leyba and Nellie were never divorced.

Nellie testified that she never got a divorce. Francies cites cases from various jurisdictions to the effect that this testimo-

ny was insufficient to show no divorce. We agree. *In re Jubala's Estate,* 40 N.M. 312, 59 P.2d 356 (1936) quotes with approval the rule that proof of one party not having obtained a divorce is insufficient because the other party might have obtained a divorce.

The question then is whether there was sufficient evidence that Leyba did not obtain a divorce from Nellie. We review four items of evidence.

1. Francies testified that she knew Leyba had been married to Nellie and knew that Leyba had been divorced from Pat. Francies had seen the decree of divorce from Pat which Leyba kept in "his glove compartment" (presumably of his car). There were no papers regarding a divorce from Nellie. Francies never saw any evidence of a divorce from Nellie.

■ 2. Lila Tapia was a sister of Leyba. She rented the house that Leyba and Francies had been buying at the time of Leyba's death. She rented from Francies; Francies was a good friend. Lila knew that Leyba had married Nellie. Asked if she knew whether they were divorced, Lila replied: "No, not that I ever heard." There was no objection to this testimony which was admissible under Evidence Rule 803(19).

3. Nellie testified that although she lived at various places in Albuquerque after 1959, she could always be reached through her mother. Leyba knew where the mother lived and was in occasional contact with Nellie's mother after 1959. Nellie testified that she was never served with any divorce papers.

■ 4. Nellie testified that during the time she lived with Leyba in 1972, he asked her if she had gotten a divorce and she said she had not. Nellie also testified that Leyba told her that he had not obtained a divorce. Francies objected to testimony as to what Leyba had said on the grounds that it was impermissible here-

say. This testimony was properly admitted. Leyba was dead and therefore unavailable as a witness. Evidence Rule 804(a)(4). A statement concerning the declarant's own divorce is not excluded by the hearsay rule if the declarant is unavailable. Evidence Rule 804(b)(5).

■ The foregoing items amount to substantial evidence that Leyba did not obtain a divorce from Nellie. The items support the trial court's finding that Leyba did not have the capacity to marry Francies in August, 1969; that Francies was not Leyba's widow; and the trial court's conclusion that Nellie overcame the presumption favoring the marriage of Leyba and Francies. *Panzer v. Panzer,* supra. Viewing the foregoing items in the light most favorable to support the trial court decision, the trial court could properly have determined that the evidence was clear and convincing that Leyba and Nellie were never divorced. *Panzer v. Panzer,* supra; *Duke City Lumber Company, Inc., v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975).

Denial of compensation benefits to Francies is affirmed.

*Whether Wife No. 1 Was Entitled to Compensation*

Pat never claimed compensation benefits as a widow; there was no issue at trial concerning her purported common law marriage to Leyba. No claim is made on appeal that Leyba's relationship with Pat affected Nellie's status as the legal widow of Leyba.

Although Nellie was the widow of Leyba, she was not living with him at the time of his death. Nellie claims compensation benefits on the basis that she was legally entitled to be supported by him. Section 59–10–12.10, supra. The trial court found that she was not entitled to support; the issue is the propriety of this finding.

Prior compensation decisions do not provide the answer because the issue in those

584

decisions was dependency of the widow rather than entitlement to support. *Houston v. Lovington Storage Company*, 75 N. M. 60, 400 P.2d 476 (1965); *Merrill v. Penasco Lumber Co.*, 27 N.M. 632, 204 P. 72 (1922); Compare, *Tocci v. Albuquerque & Cerrillos Coal Co.*, 45 N.M. 133, 112 P. 2d 515 (1941). The requirement that the widow be actually dependent was removed by Laws 1965, ch. 295. Compare, § 59–10–12.10, supra, with § 59–10–12(j), N.M. S.A.1953 (1st Repl. Vol. 9, pt. 1).

Nellie claims that she was legally entitled to support because she was the lawful wife of Leyba. See § 57–2–1, N.M.S.A. 1953 (Repl. Vol. 8, pt. 2) which provides that husband and wife contract the obligation of mutual support. *Kuert v. Kuert*, 60 N.M. 432, 292 P.2d 115 (1956). See also, *Merrill v. Penasco Lumber Co.*, supra, which refers to "the existence of a marriage with consequent liability to support".

■ Marriage with a consequent liability for support does not provide the answer because the right to support may not exist under the facts of a particular case. Numerous decisions in other jurisdictions have considered the right of a spouse to be supported. Where the spouses have separated, consideration has been given to the cause of the separation; the inquiry most often centered on which spouse was at "fault" for the separation. 3 Nelson, Divorce and Annulment (2nd Ed.), §§ 32.09, 32.11, 32.13, 32.16, 32.17, 32.19–32.22; Annot., 10 A.L.R.2d 466 (1950).

■ In New Mexico we are not concerned with "fault" of the spouse in determining a right to support. Where husband and wife have permanently separated, either may institute proceedings for alimony. Section 22–7–2, N.M.S.A.1953 (Supp. 1975). An award of alimony is not dependent on the fault of a spouse. *Fitzgerald v. Fitzgerald*, 70 N.M. 11, 369 P.2d 398 (1962); *Redman v. Redman*, 64 N.M. 339, 328 P.2d 595 (1958); *Cassan v. Cassan*, 27 N.M. 256, 199 P. 1010 (1921). Alimony is

a "substitute for, and in lieu of, the common law or statutory right to marital support during coverture." *Chavez v. Chavez*, 82 N.M. 624, 485 P.2d 735 (1971). Alimony "is a continuation of the right to support." *Burnside v. Burnside*, 85 N.M. 517, 514 P.2d 36 (1973).

■ Alimony, as a continuation of or a substitute for the right to support is not an absolute right; rather, it is a personal right. *Burnside v. Burnside,* supra. Accordingly, Nellie's right to support from Leyba was personal and not absolute.

■ The authority of a court to award alimony (or support) under § 22–7–2, supra, is an equitable power. *Ex parte Sedillo*, 34 N.M. 98, 278 P. 202 (1929); see *Redman v. Redman*, supra; Compare 3 Nelson, supra, § 32.03. Equity regards the substance, not the form. *Skaggs Drug Center v. General Electric Company*, 63 N.M. 215, 315 P.2d 967 (1957); *Cooper v. Otero*, 38 N.M. 164, 29 P.2d 341 (1934). We consider the substance of Nellie's right to support in determining whether the trial court erred in finding that Nellie was not legally entitled to support from Leyba. In making that determination, the question is whether the trial court abused its discretion in exercising its equitable power. See *Home Savings & Loan Association v. Bates*, 76 N.M. 660, 417 P.2d 798 (1966).

■ When Leyba and Nellie separated in 1959, Nellie had no intention of living with Leyba again. Nellie began living with Lucero in 1961 and lived with, and was supported by him approximately ten years. She had four children by Lucero. She began using Lucero as her name in 1961; her driver's license and welfare papers use the Lucero name. Other than this lawsuit, she has not used Leyba as her name on any legal document in the past ten years. While living with Leyba for a short time in 1972, she maintained a separate residence, going "back and forth to my house and his house." One of the reasons she separated from Leyba in 1972 was

"my kids" that did not belong to Leyba. She referred to Lucero as her husband and did so in her deposition about two weeks before the trial. After separating from Leyba in 1972, she did not expect Leyba to contribute to her support.

On the foregoing evidence, the trial court in the exercise of its equitable powers, could properly find that Nellie was not legally entitled to be supported by Leyba. See *Martinez v. Lucero,* 1 N.M. 208 (1857).

Denial of compensation benefits to Nellie is affirmed.

### Attorney Fees on Appeal

The trial court awarded attorney fees on behalf of the children to be paid by the employer. A partial satisfaction of the judgment has been filed which is to the effect that the attorney fees awarded by the trial court have been paid.

The employer asserts that this Court has no jurisdiction to award attorney fees for the services of the childrens' attorneys on appeal. By "jurisdiction" the employer means power or authority. *Heckathorn v. Heckathorn,* 77 N.M. 369, 423 P.2d 410 (1967). The employer's contention is based on § 59–10–23(D), N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1), the pertinent portion of which reads:

". . . where compensation to which any person shall be entitled . . . shall be refused and the claimant shall thereafter collect compensation through court proceedings . . . then the compensation to be paid the attorney for the claimant shall be fixed by the court trying the same or the Supreme Court upon appeal in such amount as the court may deem reasonable and proper and when so fixed and allowed by the court shall be paid by the employer . . . ."

The employer does not claim that the Court of Appeals lacks authority to award attorney fees on appeal. See *Measday v.*

*Sweazea,* 78 N.M. 781, 438 P.2d 525, 26 A. L.R.3d 1386 (Ct.App.1968).

The employer contends that it has not "refused" to pay the compensation awarded by the trial court; that it is paying the compensation award to the children. The employer points out that it did not appeal the trial court's judgment. Accordingly, the employer claims that this Court has no authority to award attorney fees on appeal because no statute, rule of court or contract authorizes an award. See *Aboud v. Adams,* 84 N.M. 683, 507 P.2d 430 (1973).

The employer would limit the meaning of "refusal" to pay compensation to a refusal to pay after entry of judgment. Section 59–10–23(D), supra, is not so limited. Attorney fees on appeal are authorized if the employer refuses to pay compensation and the claimant thereafter collects compensation in the trial court. In this situation, attorney fees may be awarded against the employer, both in the trial court and on appeal.

The employer did refuse to pay compensation. Its answer to the claim of Pat, on behalf of the children, and its answers to the claims of Francies and Nellie were identical. The employer was willing to pay compensation to the dependants entitled thereto but did not know who they were and "therefore withheld payment of compensation pending a determination by appropriate authority." This was a refusal to pay. *Employers Mutual Liability Ins. Co. of Wis. v. Jarde,* 73 N.M. 371, 388 P. 2d 382 (1963).

After the employer's refusal to pay compensation, Pat, on behalf of the children, collected compensation in court proceedings. These two facts being established, the appellate court had authority to award attorney fees on appeal. Section 59–10–23(D), supra, does not limit this authority to situations where the employer appeals. The statutory authority exists even though the employer is satisfied with the trial court judgment and an unsuccess-

ful claimant appeals in an effort to obtain a part of the compensation awarded to a successful claimant.

The facts of this case show that our holding is equitable. On appeal, the employer has taken the position that it will pay compensation to the claimants held by this Court to be entitled to compensation. The employer has not attempted to defend the compensation award in favor of the children. It was left to Pat to defend the children's compensation against the efforts of Nellie and Francies to diminish the award to the children. Pat, on behalf of the children, is in the position of collecting compensation on the appeal by defending the trial court's award. Under § 59–10–23(D), supra, the employer should pay a reasonable attorney fee for the successful defense on appeal.

Oral argument is unnecessary. The judgment of the trial court is affirmed. Pat, on behalf of the children, is awarded $1,750.00 as and for attorney fees for the appeal.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.