642 P.2d 1124

Rita SCHALL, and Rita Schall as next friend of Fernando Griego, Raymond Griego and Louis Griego, Plaintiffs-Appellants,

v.

Thelma B. SCHALL, Individually, as a mother and next friend of Andrea Dawn Schall, A minor and dependent child of Ronald Schall, Deceased, Plaintiffs-Appellants,

v.

JACK'S TREE AND SHRUBBERY SERVICE, and United States Fidelity & Guaranty Company, Defendants-Appellees.

Nos. 5197, 5123.

Court of Appeals of New Mexico.

Feb. 25, 1982.

Victor Roybal, Jr., Albuquerque, for plaintiff-appellant Thelma Schall.

Maria G. Geer, Albuquerque, for plaintiff-appellant Rita Schall.

Hal Simmons, Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

These actions arise out of a dispute between two claimants, Thelma and Rita Schall (decedent's second and third wives, respectively), each alleging herself to be the surviving widow of Ronald Schall and seeking, under the Workmen's Compensation Act, widow's and children's benefits as the result of his work-related death on July 7, 1979.

On April 1, 1980, Rita Schall individually and as next friend of her children Fernando Griego, Raymond Griego and Louis Griego, filed a workmen's compensation action against decedent's employer, Jack's Tree and Shrubbery Service and its insurer, United States Fidelity and Guaranty, Inc.

Thereafter, Thelma brought a separate action against defendants seeking widow's and children's benefits on behalf of herself and her minor daughter, Andrea Schall. Thelma alleged that she was still lawfully married to decedent at the time of his death, and that she and decedent's minor daughter were legally entitled to his support.

Defendants filed answers to the two claims, denied plaintiffs respective allegations, except for the occurrence of the fatal injury to Ronald Schall. Defendants asserted that they had received conflicting claims for decedent's benefits and were uncertain as to which parties were lawfully entitled to them. Defendant employer had previously filed a third-party complaint against Thelma and her daughter, Andrea, asking the court to determine what, if any, rights, these plaintiffs had as dependents of decedent. The separate actions were consolidated for trial.

After hearing on the merits, the court entered findings and conclusions awarding compensation benefits to decedent's third wife, Rita. It denied benefits to decedent's second wife, Thelma. It awarded equal children's benefits to decedent's three stepchildren from his marriage to Rita, and to his natural daughter by Thelma, and awarded equal attorney's fees to both Rita and Thelma. Both claimants appeal from the judgment.

The principal points asserted in the two appeals are:

*Claim of Thelma Schall:*

(1) The trial court erred in failing to find that she was entitled to benefits as the rightful widow of decedent.

*Claim of Rita Schall:*

(2) The trial court erred in failing to award compensation benefits as required by statute;

(3) The court abused its discretion in its award of attorney's fees to both claimants.

I. *Thelma Schall's Appeal:*

On appeal, Thelma argues that she, and not Rita was decedent's lawful widow and thus entitled to the award of widow's benefits.

Thelma further argues that § 52–1–17, N.M.S.A.1978, of the Workmen's Compensation Act does not require that a wife be actually dependent upon her husband for support to recover compensation benefits in the event of his death. The failure of a deceased workman to support a wife or children before death is not determinative

of the issue of dependency and constitutes only one of several factors which may be considered. *Kau v. Bennett*, 91 N.M. 162, 571 P.2d 819 (Ct.App.1977); *In re Tocci*, 45 N.M. 133, 112 P.2d 515 (1941).

Section 52–1–17, *supra*, of the Workmen's Compensation Act specifies that, in the event of the death of a workman:

[T]he following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of the Workmen's Compensation Act:

A. a child under eighteen years of age incapable of self-support and unmarried or under twenty-three years of age if enrolled as a full-time student in any accredited educational institution;

B. the widow or widower, only if living with the deceased at the time of his death, or legally entitled to support from, including a divorced spouse entitled to alimony;

. . . .

The relation of dependency must exist at the time of the injury.

■ In New Mexico, where the validity of a subsequent marriage is attacked on the basis of the continuing existence of a prior marriage at the time the second was contracted, a presumption of validity attaches to the last marriage. *Panzer v. Panzer*, 87 N.M. 29, 528 P.2d 888 (1974); *see also Trower v. Board of County Commissioners*, 75 N.M. 125, 401 P.2d 109 (1965); *Lauderdale v. Hydro Conduit Corp.*, 89 N.M. 579, 555 P.2d 700 (Ct.App.1976). As held in *Panzer*, the quantum of proof required to overcome the presumption of validity of a subsequent marriage is "clear and convincing evidence." *Panzer* quotes with approval the following language from *In re Jubala's Estate*, 40 N.M. 312, 59 P.2d 356 (1936):

To overcome the prima facie case established by the showing of subsequent marriage, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce.

■ Decedent and Thelma Schall were married in Illinois on March 18, 1969. They separated informally in June, 1969, and de-

cedent left Illinois. Subsequently, their one child, Andrea Dawn, was born August 12, 1969.

Decedent married Rita in New Mexico in April, 1979. She had three minor children from a prior marriage. Three months later, decedent was killed in a motor vehicle accident which occurred during the course and scope of his employment.

Thelma testified that after decedent left Illinois, her contacts with him were few. She received a letter from decedent in May of 1970, advising her that he had obtained a divorce from her while living in New Mexico, but providing no other details. Thelma never received formal notice or documents pertaining to a divorce from decedent, and was never apprised as to when or where any divorce was filed or formalized. Thelma presented evidence at trial that she and decedent had lived during their marriage in the same home in Medora, Illinois, that she still occupies. Decedent knew at all times where she resided. She also testified that she had never sought or obtained a legal separation or divorce. Decedent's letter was not tendered into evidence as an exhibit, nor was evidence presented at trial that officially confirmed the granting of a divorce.

Pursuant to N.M.R.Evid. 803(10), N.M.S.A.1978, Thelma introduced affidavits from the district court clerks of each of the judicial districts in New Mexico. The affidavits stated that no records of a divorce proceeding or final decree existed in which Ronald Schall was a party. Thelma asserts that this was clear and convincing evidence sufficient to overcome the presumption that decedent's second marriage was valid. She contends that since the affidavits indicated decedent had not been divorced in New Mexico, decedent's subsequent marriage to Rita was legally invalid because of a prior existing valid marriage.

In arriving at its final decision, the trial court made findings of fact that, after decedent separated from Thelma in June, 1969, he was a long-distance truck driver who traveled throughout the continental United

States; that he did not have a permanent residence or mailing address prior to April 6, 1979, when Rita and decedent were married in Albuquerque, New Mexico. The trial court further found that in May, 1970, Thelma was notified by decedent that he had obtained a divorce from her.

The standard of review applicable as to whether a presumption has been rebutted by clear and convincing evidence was set forth in *Estate of Fletcher v. Jackson*, 94 N.M. 572, 613 P.2d 714 (Ct.App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980):

> It is for the fact finder ... to determine whether the proof requirement had been met; the appellate court reviews the evidence in the light most favorable to the prevailing party and determines whether the fact finder could properly have determined whether the proof requirement had been met.

Thelma presented evidence that decedent did not obtain a divorce in New Mexico. This fact did not negate by clear and convincing evidence the presumption of validity of decedent's marriage to Rita in 1979. During the ten-year interval between marriages, it is undisputed that he traveled extensively throughout the United States. Whether or not decedent was validly divorced in a jurisdiction other than New Mexico was not established.

The evidence also indicated that decedent had been married and divorced before he married Thelma. Decedent was cognizant of the steps necessary to legally dissolve an existing marriage.

Not only was the evidence insufficient to rebut the presumption that Rita's marriage was valid, its validity was supported by substantial evidence. Findings of fact supported by substantial evidence will not be overturned on appeal. *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977); *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980); Den-Gar explains that substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The evidence adduced in the trial below supports the trial court's findings and conclusions that decedent was validly married to Rita at the time of his death. *Lauderdale v. Hydro Conduit Corp., supra.*

II. *Rita Schall's Appeal*:

A) *Computation of Survivors' Benefits*:

Rita challenges the trial court's computation and distribution of survivors' benefits to herself, her three children, (decedent's stepchildren), and decedent's natural daughter from his marriage to Thelma.

The parties stipulated that at the time of his death, decedent was earning $6.00 per hour, working an average of forty hours a week, and making an average weekly wage of $240.00, two-thirds of which is $160.00.

The trial court's conclusion of law no. 4 awarded benefits as follows:

> 4. Workmen's compensation payments as of the date of death, required to be paid by Jack's Tree and Shrubbery Service and United States Fidelity & Guaranty Insurance Company, are as follows:
>
> | A. | Rita C. Schall, | 40% or $64.00/week |
> | B. | Fernando Griego, Jr. | 15% or $24.00/week |
> | C. | Raymond Griego, | 15% or $24.00/week |
> | D. | Louis Griego, | 15% or $24.00/week |
> | E. | Andrea Schall | 15% or $24.00/week |

In making its computation, the court obviously took 40% of two-thirds of decedent's average weekly wage (40% of $160), and distributed the remaining 60% of $160.00 between the four children.

Rita argues that the court's computation does not comport with § 52–1–46(C)(3), N.M.S.A., 1978. It provides that upon the death of a covered employee, benefits are to be distributed as follows:

> [To] the widow or widower if there be a child or children living with the widow or widower, forty-five percent of the average weekly wage of deceased, or forty percent, if such child is not or all such children are not living with a widow or widower, and in addition thereto, compensation benefits for the child or children which shall make the total benefits for the widow or widower and child or children sixty-six and two-thirds percent

of the average weekly wage of the deceased. When there are two or more children, the compensation benefits payable on account of such children shall be divided among such children, share and share alike;

Rita contends that the trial court should have awarded her 40% of the average weekly wage of decedent, (40% of $240) and awarded the children the difference between 40% and 66 and ⅔% of the average weekly wage of decedent, (or 16⅔%), share and share alike.

Although § 52–1–46, *supra*, delineates the compensation benefits payable upon the death of a workman, it is expressly limited by the language of Subsection G thereof, which provides:

G. no compensation benefits payable by reason of a workman's death shall exceed the maximum weekly compensation benefits as provided in Section 52–1–41 NMSA 1978 and no dependent nor any class thereof, other than a widow, widower or children, shall in any event be paid total benefits in excess of seven thousand five hundred dollars ($7,500) exclusive of funeral expenses and the expenses provided for medical and hospital services for the deceased paid for by the employer.

Rita agrees that § 52–1–41(A), N.M.S.A. 1978, limits workmen's compensation benefits to the lesser of either two-thirds of a workman's average weekly wage of $96.00 or the state maximum, which was $186.38 at the time of decedent's death.

■ Under § 52–1–46, *supra*, for purposes of awarding survivor's benefits, dependent minor stepchildren, whether adopted or not, and natural children are treated equally, and each is entitled to share alike. *See* § 52–1–18, N.M.S.A.1978; *Shahan v. Beasley Hot Shot Service, Inc.*, 91 N.M. 462, 575 P.2d 1347 (Ct.App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

Section 52–1–46(C)(3) *supra*, unequivocally awards a widow or widower of a deceased workman 40% of the average weekly wage of the workman, where decedent left

surviving him a minor child or children, one or more of whom are not living with the surviving spouse. Section 52–1–41(A), *supra*, and the remaining provisions of § 52–1–46(C)(3), *supra*, set out the outer limits of the total recovery.

■ Under § 52–1–46(C)(3), *supra*, Rita was thus entitled to 40% of decedent's average weekly wage of $240.00, (40% × $240.00), amounting to a weekly award of $96.00. Decedent's three stepchildren from his marriage to Rita Schall and his natural daughter are entitled to one-fourth each of the sum of $64.00, the remaining 26⅔% of decedent's average weekly wage.

The award to Rita and decedent's children and stepchildren was erroneous. Rita should receive $96.00 per week, and the children, $16.00 per week per child, for a maximum of 600 weeks.

This award is, however, subject to modification in the event the children lose their status as dependents as provided in § 52–1–46(C)(3), N.M.S.A.1978, or in the event decedent's widow dies or remarries. Section 52–1–46, *supra; Employers Mutual Liability Insurance Co. v. Jarde*, 73 N.M. 371, 388 P.2d 382 (1963).

III. *Award of Attorney's Fees*:

Rita asserts that the trial court abused its discretion in awarding identical sums as attorney's fees for Thelma and Rita.

Finding of fact no. 17 reads:

Each Plaintiff should receive a reasonable award of attorney's fees to be paid to Plaintiff's counsel and considering the offers of Defendants, and chilling effect of miserly fees, time and effort of attorney, and extent, novelty, complexity and parties involved in the issues, fees normally charged, the reputation, ability, experience, and skill of the attorney, and relative success, the amount involved, and the rate of inflation, each Plaintiff is allowed $2,250 plus tax, as compensation for their attorney.

The final judgment entered specified that "[d]efendants shall pay to each plaintiff's attorney $2,250.00, plus tax, as reasonable

attorney's fees or a total of $4,500.00, plus tax."

Neither counsel for Thelma or Rita presented any evidence at trial as to attorney's fees. At the conclusion of trial, the court stated to counsel that he was requesting "affidavits from the attorneys as to those matters that they want me to consider on attorney's fees filed no later than a week from today, and I would like requested findings and conclusions of law, if you desire them, no later than a week from today."

Counsel for Thelma and Rita submitted extensive affidavits detailing the nature and extent of work performed by them on behalf of their respective clients. No stipulation appears of record affirmatively indicating agreement on the part of the parties or the court that the affidavits be considered as evidence in fixing the award of attorney's fees. However, no objection to consideration of the affidavits was voiced by plaintiffs' attorneys or defense counsel. Rita did not request findings of fact or conclusions of law relating to an award of attorney's fees. On appeal, no issue has been raised as to the propriety of the award of attorney's fees based on the matters contained in the affidavits submitted by counsel.

Where the trial court alerts the parties of its intent to consider specific evidence, or requests the parties to submit matters for its consideration and the parties comply, making no objection to the use of such evidence or documents, the court's reliance on such evidence cannot be raised for the first time on appeal. *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976).

A party's failure to submit a request for a finding of fact or conclusion of law as to the award of attorney's fees or the amount thereof precludes our review of the issue on appeal. *Lopez v. K. B. Kennedy Engineering Co.*, 95 N.M. 507, 623 P.2d 1021 (Ct.App.1981). This court is not inclined to second-guess the trial judge in his determination as to the reasonableness of an award

of attorney's fees unless there is a lack of evidentiary basis for the court's determination or unless the court has been shown to have clearly abused its discretion. *Lopez v. K. B. Kennedy Engineering Co., supra; Lamont v. New Mexico Military Institute*, 92 N.M. 804, 595 P.2d 774 (Ct.App.), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979); *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204 (Ct.App.1978), *cert. denied*, 92 N.M. 532, 591 P.2d 286 (1979).

The trial court's finding of fact no. 17 affirmatively indicates consideration of each of the factors enumerated in *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979).

We affirm the trial court on the issues raised on appeal relating to its award to Rita of survivor's benefits herein, and the award of attorney's fees. That portion of the final judgment calculating the amount of benefits to be awarded to Rita, decedent's child and stepchildren is reversed for the award of benefits consistent with this opinion. Thelma will bear her own costs on appeal; defendants who took no part in defending Rita's or the children's right to compensation should pay the sum of $2,000 to Rita as reasonable attorney's fee for successful efforts on appeal.

IT IS SO ORDERED.

WALTERS, C. J., and LOPEZ, J., concur.