644 P.2d 1054

Genevieve ARAGON, Plaintiff-Appellant,

and

Vickie Vigil, guardian of Rudy A. Aragon, Jr., Plaintiff-Appellee,

v.

ANACONDA MINING COMPANY, Employer and Insurer, Defendant-Appellee.

No. 5376.

Court of Appeals of New Mexico.

April 20, 1982.

Michael G. Rosenberg, Michael G. Rosenberg & Associates, Albuquerque, for plaintiff-appellant.

James G. Chakeres, Horton & Associates, Albuquerque, for plaintiff-appellee.

Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for defendant-appellee.

## OPINION

LOPEZ, Judge.

This case is an appeal from a judgment in a Workmen's Compensation case awarding all available death benefits of the deceased workman, Rudy A. Aragon, to his son, Rudy A. Aragon, Jr. We affirm.

The appeal presents the following three issues: 1. Reduction of death benefits; 2. Apportionment of death benefits; and 3. Attorney's fees.

Rudy Aragon was accidently killed while in the course and scope of his employment with Anaconda Mining Company. His mother claimed death benefits on the basis that she was at least partially dependent on her son. Then Aragon's acknowledged illegitimate son, Rudy Aragon, Jr., made a claim for benefits.

The trial court found that the mother was partially dependent on the deceased, but it awarded no benefits to her. It awarded all available benefits to the deceased's infant son. The mother thus appeals the failure of the trial court to award her any death benefits. The son appeals the reduction of the maximum available

benefits by 10% pursuant to § 52–1–10, N.M.S.A. 1978.

*Reduction of Death Benefits*

■ The trial court made the following findings of fact regarding reduction of death benefits:

8. When killed, Rudy A. Aragon was working in an unsafe area of the mine despite warning signs and training by the company. He failed to use safety devices provided to him and on which he was trained by defendant, The Anaconda Company.

The son challenges this finding and argues in his brief that "it stretches the imagination as to how a statute designed to protect the workman can be used against his dependents to reduce their death benefits". We disagree.

The pertinent statute is § 52–1–10(A):

A. In case an injury to or death of a workman results from his failure to observe statutory regulations appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978] shall be reduced 10%.

There was evidence at trial to show that the deceased was aware that the area in which he was killed was unsafe and that he was not allowed there. There was substantial evidence to support the court's finding that Aragon was in an unsafe area, despite warnings and safety training, when a slab fell on him and killed him. Therefore, we conclude that the court's reduction of the available benefits was proper under § 52–1–10(A).

*Apportionment of Death Benefits*

■ The mother challenges the judgment of the trial court, which awarded the maximum workmen's compensation death benefits minus 10% to the son of the deceased, and denied any benefits to her. Section 52–1–46, N.M.S.A.1978, governs workmen's compensation death benefits. The statute sets out a clear set of priorities in allocating these benefits:

52–1–46. Compensation benefits for death.

Subject to the limitation of compensation payable under Subsection G of this section, if an accidental injury sustained by a workman proximately results in his death within the period of two years following his accidental injury, compensation shall be paid in the amount and to the persons entitled thereto, as follows:

A. if there be no eligible dependents, except as provided in Subsection C of Section 52–1–10 NMSA 1978 of the Workmen's Compensation Act, the compensation shall be limited to the funeral expenses, not to exceed one thousand five hundred dollars ($1,500), and the expenses provided for medical and hospital services for the deceased, together with all other sums which the deceased should have been paid for compensation benefits up to the time of his death;

B. if there be eligible dependents at the time of the workman's death, payment shall consist of a sum not to exceed one thousand five hundred dollars ($1,500) for funeral expenses, and expenses provided for medical and hospital services for the deceased, together with such other sums as the deceased should have been paid for compensation benefits up to the time of his death, and compensation benefits to the eligible dependents as hereinafter specified, subject to the limitation of the maximum period of recovery of compensation of six hundred weeks;

C. if there are eligible dependents entitled thereto, compensation shall be paid to the dependents or to the person appointed by the court to receive the same for the benefit of the dependents in such portions and amounts, to be computed and distributed as follows:

(1) to the child or children, if there be no widow or widower entitled to compensation, sixty-six and two-thirds percent of the average weekly wage of the deceased;

(2) to the widow or widower, if there be no children, sixty-six and two-thirds percent of the average weekly wage of the deceased, until remarriage; or

(3) to the widow or widower, if there be a child or children living with the widow or widower, forty-five percent of the average weekly wage of the deceased, or forty percent, if such child is not or all such children are not living with a widow or widower, and in addition thereto, compensation benefits for the child or children which shall make the total benefits for the widow or widower and child or children sixty-six and two-thirds percent of the average weekly wage of the deceased. When there are two or more children, the compensation benefits payable on account of such children shall be divided among such children, share and share alike; and

(4) two years' compensation benefits in one lump sum shall be payable to a widow or widower upon remarriage; however, the total benefits shall not exceed the maximum compensation benefit as provided in Subsection B of this section:

D. if there be neither widow, widower nor children, compensation may be paid to the father and mother or the survivor of them, if dependent to any extent upon the workman for support at the time of the workman's death, twenty-five percent of the average weekly wage of the deceased, and in no event shall the maximum compensation to such dependents exceed the amounts contributed by the deceased workman for their care; provided, that if the father and mother, or the survivor of them, shall have been totally dependent upon such workman for support at the time of the workman's death, he, she or they shall be entitled to fifty percent of the average weekly wage of the deceased;

E. if there be neither widow, widower nor children, nor dependent parent, then to the brothers and sisters, and grandchildren, if actually dependent to any extent upon the deceased workman for support at the time of the workman's death, thirty-five percent of the average weekly

wage of the deceased workman with fifteen percent additional for brothers and sisters and grandchildren in excess of two, with a maximum of sixty-six and two-thirds percent of the average weekly wage of the deceased, and in no event shall the maximum compensation to partial dependents exceed the respective amounts contributed by the deceased workman for their care;

F. in the event of the death or remarriage of the widow or widower entitled to compensation benefits as provided in this section, the surviving children shall then be entitled to compensation benefits computed and paid as provided in Paragraph (1) of Subsection C of this section for the remainder of the compensable period. In the event compensation benefits payable to children as provided in this section are terminated as provided in Subsection E of Section 52–1–17 NMSA 1978, a surviving widow or widower shall then be entitled to compensation benefits computed and paid as provided in Paragraphs (2) and (4) of Subsection C of this section for the remainder of the compensable period; and

G. no compensation benefits payable by reason of a workman's death shall exceed the maximum weekly compensation benefits as provided in Section 52–1–41 NMSA 1978 and no dependent nor any class thereof, other than a widow, widower or children, shall in any event be paid total benefits in excess of seven thousand five hundred dollars ($7,500) exclusive of funeral expenses and the expenses provided for medical and hospital services for the deceased paid for by the employer.

The statute creates three classes of dependents eligible for death benefits: Class 1, surviving spouses and children of the deceased; Class 2, dependent parents of the deceased; and Class 3, dependent siblings and grandchildren of the deceased.

The plain meaning of the statutory language quoted above gives children and surviving spouses priority over parents of the deceased, and both of those classes priority

over the siblings and grandchildren of the deceased.

The applicable subsection is (C)(1) which states that "compensation shall be paid * * (1) to the child * * * if there be no widow . . . sixty-six and two-thirds percent of the average weekly wage of the deceased[.] * * * "

This language is very clear and unambiguous. The law in New Mexico is that when the language is clear and the intent of the legislature is understood, the provisions of the statutes are mandatory and we have a duty to follow it. *See Security Trust v. Smith*, 93 N.M. 35, 596 P.2d 248 (1979).

Subsection D, which allows benefits of a parent or a deceased workman, is not applicable in the case at bar because the workman left a surviving son. Subsection D applies only "if there be *neither* widow, widower, nor children."

We nevertheless, will discuss two New Mexico death cases involving allocation of death benefits.

In *Employer's Mutual Liability Ins. Co. of Wis. v. Jarde*, 73 N.M. 371, 388 P.2d 382 (1963), the New Mexico Supreme Court interpreted a predecessor to § 52–1–46, which contained similar language, with one exception, as to allocation of benefits. That exception appears in subsection C of 59–10–18.7, N.M.S.A. 1953 (Repl. Vol. 8, pt. 1, 1960), which was in effect at the time the workman in *Jarde* died. It reads as follows:

> C. If there are eligible dependents entitled thereto, compensation shall be paid to the dependents or to the person appointed by the court to receive the same for the benefit of the dependents in such portions and amounts, subject to the maximum limitation of thirty-eight dollars ($38.00 a week, as the court, bearing in mind the necessities of the case and the best interests of the dependents and of the public may determine, to be computed and distributed as follows:

The pertinent quotation is "bearing in mind the necessities of the case and the best interests of the dependents and of the public may determine[.] * * * "

The Supreme Court in *Jarde* held that the classes of beneficiaries set out in the statute were not mutually exclusive, and that the benefits could be divided between members of the different classes. It added the proviso that the amount awarded to all beneficiaries could not exceed the maximum amount of available benefits. In *Jarde*, as in the current case, the parties claiming benefits were the mother of the deceased and the child of the deceased. The trial court awarded benefits to the child and the mother, and the Supreme Court approved this award. In the *Jarde* case, the insurance company filed an interpleader action requesting that the mother and the son be decreed to interplead and settle among themselves their claims to benefits. Once the trial court determined that both claimants were entitled to a percentage of benefits, the insurance company appealed that part of the judgment which awarded benefits to the mother. The Supreme Court affirmed the trial judge's awards to both the mother and the child of the deceased, holding that "the payment of compensation to the dependent daughter did not preclude the rights of the dependent mother." In that case, the mother and the child had agreed to the division of the benefits. In the case at bar, the mother is contesting the award of all available benefits to the son. We conclude that *Jarde* is not controlling because of the additional language in subsection C, as we have discussed, and because of the posture of the proceedings both at trial and on appeal and the position of the parties. However, we want to make it clear that we are not overruling *Jarde*. *Delgado v. Alexander*, 84 N.M. 717, 507 P.2d 778 (1973).

In *Cunnan v. Blakley and Sons, Inc.*, 93 N.M. 217, 598 P.2d 1177 (Ct.App.1979), this court held that the trial court's allocation of death benefits between a widow, a stepson and a son, which was presumably equitable, was not an abuse of discretion:

> Accordingly, we cannot say as a matter of law that the trial court abused its discretion in making the allocation award.

In so holding, we do not say that given a change of circumstance the trial court would be precluded from changing the percentage of distribution. Such would be within the equitable powers of the trial court. (citation omitted).

We conclude that *Cunnan* is distinguishable from the case at bar. The parties were different. In *Cunnan*, the workman left a widow, a stepson and a son. In the case at bar there is no widow but only a son.

We hold that the trial court followed subsection C(1) properly, and it did not err in its awards of all available benefits to the workman's son. The son had a statutory priority. There was substantial evidence to support the findings of the trial court and the findings supported the trial court's conclusions.

*Attorney's Fees.*

The issue of attorney's fees is whether Anaconda should pay the appellate attorney's fees for the mother and/or the son of the deceased. Anaconda argues that no appellate attorney's fees should be awarded either party. Anaconda claims that it did not refuse to pay benefits; that it was only looking out for the child's best interests by requiring that the court decide the proper beneficiary before it would pay benefits. This court, in *Lauderdale v. Hydro-Conduit Corporation*, 89 N.M. 579, 555 P.2d 700 (Ct.App.1976), held contrary to Anaconda's position. The court stated as follows:

The employer did refuse to pay compensation. Its answer to the claim of Pat, on behalf of the children, and its answers to the claims of Francies and Nellie were identical. The employer was willing to pay compensation to the dependents entitled thereto but did not know who they were and "therefore withheld payments of compensation pending a determination by appropriate authority." This was a refusal to pay. (citation omitted)

After the employer's refusal to pay compensation, Pat, on behalf of the children, collected compensation in court proceedings. These two facts being established, the appellate court had authority to award attorney fees on appeal. Section 59–10–23(D), supra, does not limit this authority to situations where the employer appeals. The statutory authority exists even though the employer is satisfied with the trial court judgment and an unsuccessful claimant appeals in an effort to obtain a part of the compensation awarded to a successful claimant.

The facts of this case show that our holding is equitable. On appeal, the employer has taken the position that it will pay compensation to the claimants held by this Court to be entitled to compensation. The employer has not attempted to defend the compensation award in favor of the children. It was left to Pat to defend the children's compensation against the efforts of Nellie and Francies to diminish the award to the children. Pat, on behalf of the children, is in the position of collecting compensation on the appeal by defending the trial court's award. Under § 59–10–23(D), supra, the employer should pay a reasonable attorney fee for the successful defense on appeal. [§ 59–10–23(D) is equivalent to the current § 52–1–54(D), N.M.S.A.1978.]

The record shows that Anaconda did not defend the award of benefits to the son on appeal. Anaconda merely defended the decision to reduce benefits by 10%, and it argued that it should not have to pay the son's attorney's fees. Under the holding of *Lauderdale*, Anaconda is properly required to pay the son's appellate attorney's fees, and we award such fees in the amount of $1,800.00. We do not award any appellate attorney's fees to the mother.

The judgment of the trial court is affirmed. The son is awarded appellate attorney's fees in the sum of $1,800.00.

IT IS SO ORDERED.

WALTERS, C. J., and SUTIN, J., concur.